**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MASOUD HOSSEINI,
                          *Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,
                          *Respondent.*

No. 03-73734

Agency No.
A73-985-544

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 6, 2006—Seattle, Washington

Filed September 28, 2006
Amended December 28, 2006

Before: William C. Canby, Jr., Ronald M. Gould, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Canby

**COUNSEL**

Matthew H. Adams, Northwest Immigrant Rights Project, Seattle, Washington, for the petitioner.

William C. Peachey, United States Department of Justice, Office of Immigration Litigation, Washington, D.C., for the respondent.

**ORDER**

The request of the government for clarification of this court's opinion, reported at 464 F.3d 1018, is GRANTED.

The opinion of this court, filed September 28, 2006, is amended as follows: At 464 F.3d 1024, first full paragraph, immediately following the citation to *Travel Document Requirements for Citizens of the Islamic Republic of Iran*, indicate a new footnote 6. That footnote is to state:

> The government points out that it is precluded by regulation from disclosing any information relating to Hosseini's asylum application "without the written consent" of Hosseini. 8 C.F.R. § 1208.6(a). Although that regulation restrains the government, it does not impede Iran's actions.

Original footnote 6 is then renumbered to become footnote 7.

---

**OPINION**

CANBY, Circuit Judge:

Masoud Hosseini is an Iranian citizen who came to the United States on a student visa. He did not attend school and he overstayed his visa. He was ordered deported as an overstay, but he subsequently succeeded in having his deportation proceeding reopened. He sought asylum, withholding of deportation, and adjustment of status under the Immigration and Nationality Act ("INA"). He also sought withholding and deferral of deportation under the Convention Against Torture. An immigration judge denied Hosseini all relief under the INA primarily because of his connection and activities with the Iranian dissident group Mujahedin-e Khalq ("MEK"),[1]

---

[1]The spelling of this organization varies somewhat among writers. We adopt the spelling most frequently used by the parties.

designated by the Secretary of State as a terrorist organiza-
tion. The immigration judge also denied relief under the Con-
vention Against Torture on the ground that Hosseini had
failed to show that it was more likely than not that he would
be tortured if deported to Iran.

The Board of Immigration Appeals ("BIA") dismissed
Hosseini's appeal, upholding the immigration judge's rulings.[2]
The BIA stated alternatively that it denied asylum as a matter
of discretion because of Hosseini's immigration fraud. It also
affirmed the denial of adjustment of status on the ground of
inadmissibility, but in addition denied adjustment as an exer-
cise of discretion, because of Hosseini's terrorist-connected
activities and his fraud. The BIA also stated that Hosseini's
terrorist-related activities precluded withholding of deporta-
tion not only under the INA, but also under the Convention
Against Torture. Hosseini now petitions for review.

We deny the petition with regard to the BIA's denial of
asylum and dismiss the petition with regard to the denial of
adjustment of status. We grant the petition with regard to
withholding of deportation under the INA, vacate that portion
of the BIA's decision, and remand for further proceedings.
We deny the petition for review with regard to withholding of
deportation under the Convention Against Torture. We grant
the petition for review with regard to deferral of deportation
under the Convention Against Torture, and we reverse that
portion of the BIA's decision and remand for an award of
deferral.

### Background

Hosseini's activities after coming to the United States pre-
sent a complicated scenario. Hosseini entered this country on
a student visa that allowed him to remain here for approxi-

---

[2]One member of the BIA dissented from the denial of deferral of depor-
tation under the Convention Against Torture.

mately two weeks. He obtained the visa with the help of a Los Angeles-based immigration consultant named Bahram Tabatabai. Hosseini never attended school and did not leave when his visa expired. Instead, he filed applications for political asylum with Tabatabai's help. Hosseini filed his first asylum application under a false name and alien registration number. He made numerous other false statements in this application. The Immigration and Naturalization Service ("INS") charged him with remaining in the U.S. longer than permitted and he was ordered deported *in absentia* when he did not appear for his hearing.

Hosseini filed a second asylum application using a different name and registration number. He made several other false declarations in this application. The INS charged Hosseini with deportability as an alien who was not admitted or paroled and again he was ordered deported *in absentia*.

In the meantime, the government's Joint Terrorism Task Force began investigating Tabatabai on suspicion that he was helping members of MEK commit immigration fraud. The State Department has designated MEK and an organization affiliated with MEK, the National Council of Resistance, "Foreign Terrorist Organization[s]." *See* Designation of Terrorist and Terrorist Organizations Pursuant to Executive Order 13224 of September 23, 2001, 67 Fed. Reg. 12,633 (Mar. 19, 2002); Determination Pursuant to Section 1(b) of Executive Order 13224 Relating to the Mujahedin-e Khalq (MEK), 68 Fed. Reg. 48,984 (Aug. 15, 2003). A confidential informant working with the Task Force identified Hosseini as a client of Tabatabai's and an MEK supporter. The Task Force also learned of Hosseini's fraudulent asylum applications. In March 1999, the INS took Hosseini into custody at the Los Angeles airport. The INS later amended its charges to include obtaining entry into the U.S. through fraud and failing to comply with the conditions under which he was admitted.

The immigration judge allowed Hosseini's case to be reopened, and Hosseini sought asylum, withholding of depor-

tation, and adjustment of status under the INA, and withholding and deferral of deportation under the Convention Against Torture. He denied being a member of MEK and claimed that his life would be threatened and he would be tortured in Iran because he had been labeled a Mujahedeen terrorist. The immigration judge denied his requests for relief, and the BIA affirmed. This petition for review followed.

### *Jurisdiction*

We have jurisdiction pursuant to INA § 242, 8 U.S.C. § 1252(a)(1), to review the BIA's denial of Hosseini's request for withholding and deferral of deportation. We also have jurisdiction to review the BIA's discretionary denial of Hosseini's application for asylum. *See* 8 U.S.C. § 1252(a)(2)(B)(ii) (stating that no court shall have jurisdiction to review discretionary denials "other than the granting of relief under section 1158(a)," which governs asylum applications).

We lack jurisdiction to review the BIA's denial of Hosseini's adjustment of status claim because the BIA alternatively denied relief as a matter of discretion. 8 U.S.C. § 1252(a)(2)(B)(i). The REAL ID Act does not restore our jurisdiction because Hosseini does not argue that the BIA's discretionary denial was unconstitutional or unlawful. *See* 8 U.S.C. § 1252(a)(2)(D) (allowing judicial review of "constitutional claims or questions of law"). We therefore dismiss the petition for review to the extent that it challenges the BIA's denial of adjustment of status.

### *Discussion*

The BIA conducted its own review of the evidence and law rather than simply adopting the immigration judge's decision. Accordingly, our review "is limited to the BIA's decision, except to the extent the IJ's opinion is expressly adopted." *Cordon-Garcia v. INS*, 204 F.3d 985, 990 (9th Cir. 2000).

## 1. Political Asylum

The BIA found Hosseini ineligible for asylum but it also held that, even if Hosseini were eligible, it would deny his application as a matter of discretion because he perpetrated fraud throughout his immigration proceedings. *See* 8 C.F.R. § 1208.14(a) (giving the IJ authority to "grant or deny asylum in the exercise of discretion to an applicant who qualifies as a refugee"). We affirm the BIA's discretionary denial of Hosseini's asylum application.[3]

There is substantial, uncontested evidence that Hosseini committed immigration fraud. Hosseini admitted that his first two asylum applications were fraudulent. He used false names and alien registration numbers in each application. He falsely claimed that Iranian authorities harassed his family in Iran in retaliation for an argument he had with Iranian officials. He stated that he had been arrested in Iran for being politically active, which was untrue. In his second application, he falsely claimed that he was married, that he had entered the U.S. without inspection, and that he was a member of an Iranian political organization opposed to the current regime. He also admitted obtaining a fraudulent birth certificate.

[1] In light of the uncontested evidence that Hosseini perpetrated fraud throughout his immigration proceedings, the BIA's discretionary denial is neither "manifestly contrary to the law [nor] an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D). We accordingly deny the petition for review with regard to the BIA's asylum ruling.

## 2. Withholding of Deportation under the INA

The BIA denied Hosseini's request for withholding of deportation under the INA because "he is a danger to the

---

[3]We review the BIA's decision for abuse of discretion. 8 U.S.C. § 1252(b)(4)(D).

security of the United States." Although we normally review such a finding for substantial evidence, we cannot do so here because the BIA failed to articulate sufficiently the bases for its finding. *See Mattis v. INS*, 774 F.2d 965, 967 (9th Cir. 1985) (explaining that we can affirm the BIA only on a basis articulated in its decision). We therefore vacate the denial of withholding and remand to the BIA for further proceedings.

**[2]** Under the former INA § 243, 8 U.S.C. § 1253 (repealed 1997),[4] the government can deport Hosseini to Iran even though his life and freedom may be threatened upon return as long as "there are reasonable grounds for regarding [him] as a danger to the security of the United States." 8 U.S.C. § 1253(h)(1), (2)(D) (1996). Section 1253(h)(2)(D) of the INA also provided that if Hosseini is engaged in "terrorist activities," as defined in § 241(a)(4)(B), he "shall be considered to be an alien for whom there are reasonable grounds for regarding as a danger to the security of the United States."

**[3]** The requirements for finding an alien to be a danger to the security of the United States for purposes of the INA were tightened, however, by our decision in *Cheema v. Ashcroft*, 383 F.3d 848 (9th Cir. 2004), which was issued after the BIA's decision in Hosseini's case. *Cheema* holds that it is impermissible to find that an alien is a danger to the security of the United States solely because he engaged in terrorist activity. *See id.* at 857. Terrorist activity that is directed at another country does not invariably or necessarily involve a danger to the security of the United States. *See id.* at 858-59.

---

[4]The IJ incorrectly stated that Hosseini was seeking withholding of removal under INA § 241. Hosseini was being deported, not removed. Accordingly, INA § 243(h) is the appropriate statute for withholding of deportation. As the BIA noted, however, the erroneous citation was harmless because the two sections are identical. Section 243(h) has been replaced by § 241(b)(3) but the former section governs Hosseini's claim because he was placed into deportation proceedings before April 1, 1997. Pub. L. No. 104-208, 110 Stat. 3009-612 (codified at 8 U.S.C. § 1253 (2006)).

To render an alien ineligible for withholding of deportation (or asylum) on the latter ground, there must be a finding supported by substantial evidence that links the terrorist activity "with one of the criteria relating to our national security." *Id.* at 857. Here the BIA, not having the benefit of our *Cheema* decision, made no such finding and cited to no such evidence. It also made no finding, and cited no evidence, of any reason other than terrorist activity why Hosseini is a danger to the security of the United States. The government concedes that, under these circumstances, a remand is required so that the BIA can determine the effect of *Cheema* on Hosseini's claim for withholding under the INA, which determination is for the BIA in the first instance. *See INS v. Ventura*, 537 U.S. 12, 14 (2002). We therefore vacate the BIA's denial of withholding under the INA and remand for further proceedings in which the BIA can apply the standard of *Cheema*. *See* 383 F.3d at 859. On remand the BIA must determine on the basis of substantial evidence, under the standard set forth in *Cheema* and any other applicable law, whether Hosseini is a danger to the security of the United States, so as to render him ineligible for withholding of deportation under the INA.

### 3. Withholding of Deportation under the Convention Against Torture

*Cheema* did not apply to withholding under the Convention Against Torture its requirement under the INA that terrorist activities be linked, by a finding supported by substantial evidence, to a danger to the security of the United States, *see id.* at 859, even though the same statute governs mandatory denial of withholding under the Convention Against Torture and the INA. *See* 8 C.F.R. § 1208.16(d)(2). We are bound by that holding of *Cheema*, so if the BIA's finding that Hosseini has engaged in terrorist activities is supported by substantial evidence, we must deny the petition with respect to withholding of deportation under the Convention Against Torture. *See Cheema*, 383 F.3d at 859.

We conclude that substantial evidence supports the BIA's finding that there are reasonable grounds to believe that Hosseini is engaged or is likely to engage in terrorist activity. *See* 8 U.S.C. § 1182(a)(3)(B)(i)(II).[5] The BIA did not specify which statutory definitions of terrorist activity it was relying on, but it recited evidence that Hosseini "was involved in fund-raising as well as recruiting," which fall within the definition of "engag[ing] in terrorist activity" when the fund-raising or recruiting is for a designated terrorist organization. *See* 8 U.S.C. § 1182(a)(3)(B)(iv)(IV)(bb) and (V)(bb).

The evidence of fund-raising is minimal: Hosseini sold MEK newspapers to raise funds at a rally sponsored by the National Council of Resistance. He stopped selling when he saw that he was being photographed. Other evidence that Hosseini admitted to being a "strong supporter" of MEK (and that strong supporters were contributors), is not borne out by the transcripts of the taped conversations on which that evidence was supposedly based. Hosseini did indicate in one taped conversation, however, that he was a "supporter" of MEK and "not previously, but now I may have offered some help, too." He added that his brother had "given a lot of financial help."

As for recruiting, Hosseini offered to make telephone calls to MEK members to facilitate recruiting a confidential informant to whom he was speaking. The informant was taping the conversation and had expressed an interest in joining MEK. Hosseini also stated that it would be particularly good if the informant brought along a couple of other people to be recruited. Additional testimony, however, that Hosseini had

---

[5]The immigration judge followed the statutory language in holding that there were "reasonable grounds to believe that [Hosseini] is engaged or is likely to engage in terrorist activities." In upholding this ruling, the BIA described it as a "conclusion that there is a reasonable likelihood that [Hosseini] has or will participate in terrorist-related activities." We are satisfied that this mis-description of the immigration judge's ruling on the statutory standard had no effect on the BIA's decision.

admitted recruiting in Thailand for MEK is not supported by the transcript of the taped conversation on which it was based. In that conversation, Hosseini stated that he had *been* recruited in Thailand (but he always maintained that he never became a member).

**[4]** Although this evidence of fund-raising and recruiting by Hosseini is far from overwhelming, we cannot say that it is so insignificant that it "compels a contrary result" to that reached by the BIA. *See Monjaraz-Munoz v. INS*, 327 F.3d 892, 895 (9th Cir. 2003) (stating substantial evidence standard). We therefore uphold the BIA's determination that "there is reasonable ground to believe [that Hosseini] is engaged in or is likely to engage after entry in any terrorist activity" as defined in the statute. *See* 8 U.S.C. § 1182(a)(3)(B)(i)(II). Consequently, we deny the petition for review of the BIA's denial of withholding of deportation under the Convention Against Torture.

### 4. Deferral under the Convention Against Torture

The BIA also denied Hosseini's request for deferral of removal under the Convention Against Torture. *See* 8 C.F.R. § 1208.17(a); *see also Bellout v. Ashcroft*, 363 F.3d 975, 979 (9th Cir. 2004). The BIA found Hosseini had not met his burden of proving that he is "more likely than not" to be tortured upon deportation to Iran. 8 C.F.R. § 1208.16(c)(3); *see id.* § 1208.17(a). We grant the petition as to this ruling and we reverse.

**[5]** Hosseini presented sufficient evidence to prove that Iranian officials will be able to identify him as a person involved with MEK. Upon deportation, Hosseini will have to submit to Iranian authorities "all court documents including all the charges and court orders." Embassy of Pakistan Interests Section of the Islamic Republic of Iran, *Travel Document Requirements for Citizens of the Islamic Republic of Iran.*[6]

---

[6]The government points out that it is precluded by regulation from disclosing any information relating to Hosseini's asylum application "without

His involvement with MEK is discussed at length in the immigration judge's deportation order and the BIA's affirmation of that order. Both the immigration judge and the BIA concluded that Hosseini was a strong supporter of the MEK and engaged in certain terrorist activities on its behalf. These conclusions, which were reached by U.S. immigration officials, almost certainly will catch the attention of Iranian authorities.

Two reports from the State Department establish that once Iranian authorities identify Hosseini as an MEK supporter he is likely to be tortured.[7] *See Kamalthas v. INS*, 251 F.3d 1279, 1280 (9th Cir. 2001) (noting that "country conditions alone can play a decisive role in granting relief under the Convention"). Although the reports are a few years old, the government offered no evidence suggesting they were outdated. One report states without qualification that "[k]nown or suspected members of [the MEK] face either execution or long prison terms if caught in Iran." U.S. Dep't of State, *Iran — Profile of Asylum Claims and Country Conditions* 7 (1997). It also states that "the Islamic regime's human rights record continues to be abysmal, with continued reports of extrajudicial killings and summary executions; widespread use of torture and other degrading treatment." *Id.* at 4. The other report goes further and provides that "Citizens continued to be tried and sentenced to death in the absence of sufficient procedural safeguards. . . . Supporters of outlawed political organizations, such as Mujahedin-e Khalq organization, are believed to make up a large number of those executed each year." U.S.

_____

the written consent" of Hosseini. 8 C.F.R. § 1208.6(a). Although that regulation restrains the government, it does not impede Iran's actions.

[7]We do not base our decision on Hosseini's testimony because the BIA made an adverse credibility finding. The BIA's finding is supported by substantial evidence. *See Gui v. INS*, 280 F.3d 1217, 1225 (9th Cir. 2002) (requiring substantial evidence to support an adverse credibility ruling). Hosseini admitted to falsifying documents and making fraudulent statements to immigration officials at nearly every stage of his proceedings.

Dep't of State, *Iran; Country Reports on Human Rights Practices-2000 at 2*. Moreover, "[t]he Constitution forbids the use of torture; however, there are numerous, credible reports that security forces and prison personnel continue to torture detainees and prisoners. Some prison facilities, including Tehran's Evin prison, are notorious for the cruel and prolonged acts of torture inflicted upon political opponents of the Government." *Id.* at 3. These reports of activities against MEK do not distinguish between leaders and mere supporters.

**[6]** Although the Convention Against Torture, as ratified by the United States, does not "include pain or suffering arising only from, inherent in or incidental to lawful sanctions," 8 C.F.R. § 208.18(a)(3), these Country Reports make clear that Iran's treatment of political opponents, including MEK, goes far beyond what could reasonably be regarded as "lawful sanctions." Along with the charges and evidence of Hosseini's activities in connection with MEK, they provide a sufficient basis for concluding that Hosseini is more likely than not to be tortured if he is deported to Iran. *See Khup v. Ashcroft*, 376 F.3d 898, 906-07 (9th Cir. 2004) (finding petitioner entitled to CAT relief where there were reports that the country regularly tortures detainees and evidence of past persecution). He accordingly qualifies for deferral of deportation under the Convention Against Torture. *See* 8 C.F.R. § 208.17(a).

### *Conclusion*

We decline to review for lack of jurisdiction the BIA's discretionary denial of adjustment of status. We deny the petition for review with regard to the BIA's denial of asylum. We grant the petition for review with regard to the BIA's denial of withholding of deportation under the INA, and remand for further proceedings in light of *Cheema*. We deny the petition for review with regard to withholding of deportation under the Convention Against Torture. Finally, we grant the petition for review with regard to deferral under the Convention Against

Torture and we reverse the BIA's decision and remand for an award of deferral.

**PETITION FOR REVIEW DENIED IN PART AND GRANTED IN PART; REMANDED WITH INSTRUCTIONS.**