**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| VINH TAN NGUYEN, AKA Armando Gile Luat, AKA Van Duc Vo, *Petitioner*, | No. 10-71050 |
| v. | Agency No. A027-359-701 |
| ERIC H. HOLDER, JR., Attorney General, *Respondent*. | |

| | |
|---|---|
| VINH TAN NGUYEN, *Petitioner*, | No. 10-72974 |
| v. | Agency No. A027-359-701 |
| ERIC H. HOLDER, JR., Attorney General, *Respondent*. | |

| | |
|---|---|
| VINH TAN NGUYEN, AKA Van Duc Bo, AKA Armando Gile Luat, *Petitioner*, | No. 10-73904 |
| v. | Agency No. A027-359-701 |
| ERIC H. HOLDER, JR., Attorney General, *Respondent*. | OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
October 8, 2013—Pasadena, California

Filed August 14, 2014

Before:  Harry Pregerson, Kim McLane Wardlaw,
and Richard C. Tallman, Circuit Judges.

Opinion by Judge Pregerson;
Partial Concurrence and Partial Dissent by Judge Tallman

## SUMMARY[*]

### Immigration

The panel denied in part and granted in part Vinh Tan Nguyen's petition for review of a Board of Immigration Appeals' decision, which held that his conviction for misuse of a passport to facilitate an act of international terrorism, in violation of 18 U.S.C. §§ 1544, 2331, is a categorical crime involving moral turpitude, and denied his application for deferral of removal under the Convention Against Torture.

The panel held that the "intent to facilitate an act of international terrorism" is an element of Nguyen's conviction because it increased the maximum criminal penalty to which

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

he was exposed. The panel also held that the conviction is categorically morally turpitudinous, because it necessarily involves an intent to harm someone or necessarily targets "a protected class of victim." The panel held that the Board thus did not err in determining that Nguyen's conviction is a categorical crime involving moral turpitude.

Turning to the Board's denial of deferral of removal under the Convention Against Torture, the panel held that the evidence in the record compels any reasonable factfinder to conclude that the Vietnamese government is aware of Nguyen's activities on behalf of the Government of Free Vietnam, and that the record likewise compels any reasonable factfinder to conclude that, if Nguyen is removed to Vietnam, he is more likely than not to be tortured. The panel remanded with instructions that the agency grant Nguyen deferral of removal.

Concurring in part and dissenting in part, Judge Tallman wrote that, although the case is close, the evidence does not compel the conclusion that Nguyen will more likely than not be tortured. Judge Tallman wrote further that even if he agreed with the majority as to the merits of the CAT claim, he would remand to the Board for additional investigation or explanation, rather than ordering the granting of relief outright.

## COUNSEL

Gary Silbiger (argued), Silbiger & Honig, Culver City, California, for Petitioner.

Lyle D. Jentzer (argued), Senior Counsel for National Security and Christopher C. Fuller, Senior Litigation Counsel, Office of Immigration Litigation; Tony West, Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.

## OPINION

PREGERSON, Circuit Judge:

Vinh Tan Nguyen ("Nguyen"), a native and citizen of Vietnam, petitions for review of a Board of Immigration Appeals ("BIA") decision dismissing his appeal from an order of removal entered by an Immigration Judge ("IJ"). Nguyen argues, *inter alia*, that the BIA erred in concluding that he was inadmissible for having been convicted of a crime involving moral turpitude, and that he is entitled to protection under the Convention Against Torture ("CAT").[1] We conclude that the BIA did not err in determining that Nguyen was convicted of a crime involving moral turpitude, because the crime of which Nguyen was convicted — misuse of a passport to facilitate an act of international terrorism, 18 U.S.C. §§ 1544, 2331 — is categorically morally turpitudinous. We also conclude, however, that the record compels the conclusion that Nguyen is more likely than not

---

[1] We address Nguyen's other claims in a Memorandum disposition filed concurrently with this Opinion.

to be tortured if he is removed to Vietnam. Thus, we grant the petition with respect to Nguyen's CAT claim, and remand with instructions to grant him deferral of removal under CAT.

## FACTUAL BACKGROUND

Whatever else one can say about Nguyen, one cannot doubt his enduring opposition to Vietnamese communism. In 1983, eight years after his native South Vietnam fell to the communists, Nguyen fled Vietnam as a refugee. He arrived in the United States in 1984, and soon became a legal permanent resident. A decade later, in 1995, Nguyen joined a group of Vietnamese exiles seeking to overthrow Vietnam's communist government, who style themselves the "Government of Free Vietnam."

Nguyen became a prominent member of the Government of Free Vietnam. Between 1995 and 1997, Nguyen traveled throughout the United States to prosthelytize on the organization's behalf. Between 1998 and 2001, Nguyen also spread the group's message to Vietnamese communities in Australia and Canada. Not all of Nguyen's travel was so mundane, however. In 1997, Nguyen traveled to Thailand and Cambodia; from Cambodia, he infiltrated Vietnam, sneaking across the border through the jungle. There, Nguyen served as "vice commander" of a jungle camp run by the Government of Free Vietnam, spreading the organization's political message and training sympathetic Vietnamese in "self-defense."

Nguyen's next trip to Southeast Asia was even more dramatic. In April 2001, Nguyen traveled to the Philippines on a U.S. passport belonging to his brother, Van Duc Vo. Two months later, on June 19, 2001, the real Van Duc Vo

tried to bomb the Vietnamese Embassy in Bangkok, Thailand. Two months after that, on August 30, 2001, Philippine police caught Nguyen himself "in the act of assembling explosive devices" using ammonium nitrate. It was widely reported that Nguyen, following in his brother's footsteps, planned to bomb the Vietnamese Embassy in Manila.

Philippine authorities charged Nguyen with "manufactur[ing], assembl[ing], and possess[ing] explosives." Nguyen ultimately pled guilty to a lesser explosives-related offense. In November 2004, a Philippine court sentenced Nguyen to between fifty and seventy-two months in prison.

But Nguyen soon escaped from prison and fled the Philippines. Using yet another false passport, Nguyen made his way to Ghana. After spending several months in Ghana, Nguyen left for Saipan, in the Commonwealth of the Northern Mariana Islands.

The Federal Bureau of Investigation was on Nguyen's trail. A federal judge had issued a warrant for Nguyen's arrest: Nguyen was wanted by U.S. authorities for using his brother's U.S. passport to travel to the Philippines. The FBI found Nguyen in Saipan, and arrested him there on December 12, 2006. Accompanied by law enforcement, Nguyen was paroled into the United States at Agana, Guam, on December 14, 2006.[2]

---

[2] "Prior to passage of the [Consolidated Natural Resources Act of 2008, Pub. L. No. 110–229, 122 Stat. 754 (codified in relevant part at 48 U.S.C. §§ 1806–1808)], the [Commonwealth of the Northern Mariana Islands] was considered to be outside the United States for immigration purposes." *United States v. Li*, 643 F.3d 1183, 1184 (9th Cir. 2011).

Nguyen was brought before the U.S. District Court for the Central District of California, where an indictment charged him with violating 18 U.S.C. § 1544, misuse of passport. Section 1544 provides, in relevant part:

> Whoever willfully and knowingly uses, or attempts to use, any passport issued or designed for the use of another . . . .
>
> Shall be fined under this title, imprisoned not more than 25 years (if the offense was committed to facilitate an act of international terrorism (as defined in section 2331 of this title) . . . or 15 years (in the case of any other offense) . . . .

18 U.S.C. § 1544. Specifically, the Grand Jury alleged that Nguyen "willfully and knowingly used a passport issued and designed for the use of another, to facilitate an act of international terrorism, as defined in Title 18, United States Code, Section 2331(1)." On November 14, 2007, Nguyen pled guilty to "MISUSE OF PASSPORT in violation of 18 U.S.C. § 1544, as charged in Count 1 of the Single-Count Indictment." Nguyen was sentenced to fourteen months in prison.

## PROCEDURAL BACKGROUND

Nguyen's immigration parole expired on June 13, 2007. On December 21, 2007, the Department of Homeland Security served Nguyen with a Notice to Appear. The Notice to Appear alleged that Nguyen was inadmissible as an arriving alien not in possession of a valid entry document, *see* 8 U.S.C. § 1182(a)(7)(A)(i)(I), and also as an alien who has

been convicted of a crime involving moral turpitude, *see* 8 U.S.C. § 1182(a)(2)(A)(i)(I). Specifically, the Notice to Appear alleged that Nguyen had been convicted of two crimes involving moral turpitude — "Misuse of Passport to Facilitate an Act of International Terrorism" under 18 U.S.C. § 1544, and "Inflict[ing] Corporal Injury on Spouse," in violation of California Penal Code § 273.5. Nguyen admitted both convictions, without conceding that either constituted a crime involving moral turpitude. An IJ sustained both charges of inadmissibility against Nguyen, concluding that Nguyen was inadmissible as an arriving alien not in possession of a valid entry document, and also as an alien who has been convicted of a crime involving moral turpitude.

Nguyen applied for deferral of removal under the Convention Against Torture. *See* 8 C.F.R. § 1208.17(a).

In support of his CAT claim, Nguyen testified and presented six other witnesses at a hearing before a new IJ. Two of Nguyen's witnesses testified that they knew people who had been political prisoners in Vietnam, and these political prisoners had been physically mistreated. Nguyen also presented two witnesses who had, themselves, been political prisoners in Vietnam. Both of these witnesses testified that they were physically mistreated during their imprisonment. The first witness testified that he was deprived of adequate food and water, and that he watched a fellow prisoner starve to death under similar conditions. The second witness was forcibly injected with an unknown substance, which apparently caused her to lose consciousness; it later left her feeling dazed and numb. This same witness was also beaten so badly that her leg was broken, and she was left permanently disabled.

The Government presented one witness, a retired Harvard Law School research fellow who testified about country conditions in Vietnam. The research fellow concluded that Nguyen was unlikely to be tortured because Vietnam does not engage in torture: torture is against the law in Vietnam, and the Vietnamese government would not risk harming its domestic or international reputation by torturing prisoners. Likewise, the research fellow opined that — though Nguyen was sure to be taken into custody in Vietnam, and sure to be interrogated — he was likely to cooperate with his interrogators, and so the Vietnamese government would not "need" to torture him.

The IJ also considered a wide range of documentary evidence detailing Vietnam's dismal human rights record. For example, the IJ considered a 2008 Human Rights Watch report, which confirmed that "there is compelling evidence of torture and ill-treatment of political prisoners" in Vietnam, "including beatings and electric shock." The IJ also considered the State Department's 2008 Human Rights Report on Vietnam, which agreed that — though "[t]he law prohibits physical abuse" — "police commonly physically mistreated suspects during arrest or detention."

After the hearing, the IJ denied Nguyen's application for protection under CAT and ordered him removed to Vietnam.

Nguyen appealed to the BIA, which dismissed Nguyen's appeal in a reasoned, non-precedential decision. The BIA concluded that Nguyen had been convicted of a crime involving moral turpitude, reasoning (*inter alia*) that — given Nguyen's "intention to facilitate an act of international terrorism" — his offense was "morally reprehensible." With respect to Nguyen's CAT claim, the BIA concluded that

Nguyen "does not point to any substantial evidence corroborating his fear that the Vietnamese authorities have become aware of his conviction in the Philippines or his other public activities in opposition to the Vietnamese regime"; thus, the BIA reasoned, Nguyen could not show that the Vietnamese government was likely to torture him in connection with those activities. The BIA recognized that the record "certainly demonstrates that torture sometimes occurs in Vietnam, but it does not establish that such severe physical mistreatment is a common occurrence, or that it would more likely than not be inflicted on the respondent personally."

We now consider Nguyen's arguments that the BIA erred in finding him inadmissible and ineligible for CAT relief.

## DISCUSSION

### I. Whether Nguyen Was Convicted of a Crime Involving Moral Turpitude

"A crime involving moral turpitude is either one that involves fraud or one that involves grave acts of baseness or depravity, such that its commission 'offend[s] the most fundamental [moral] values of society.'" *Robles-Urrea v. Holder*, 678 F.3d 702, 705 (9th Cir. 2012) (quoting *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1074–75 (9th Cir. 2007) (en banc) (Reinhardt, J., concurring for the majority)). Though we generally lack jurisdiction to review orders of removal based on a conviction of a crime involving moral turpitude, 8 U.S.C. § 1252(a)(2)(C), "we have jurisdiction to review the [BIA's] determination that [Petitioner's] convictions are, in fact, crimes involving moral turpitude" in the first place, *Marmolejo-Campos v. Holder*, 558 F.3d 903,

907 (9th Cir. 2009) (en banc) (internal quotation marks omitted).

"The determination whether a conviction under a criminal statute is categorically a crime of moral turpitude involves two steps, to which different standards of review apply." *Castrijon-Garcia v. Holder*, 704 F.3d 1205, 1208 (9th Cir. 2013) (alteration omitted). First, we identify the elements of the statute of conviction, reviewing the BIA's conclusions on this point de novo. *Id.* Second, we "compare the elements of the statute of conviction to the generic definition of a crime of moral turpitude and decide whether the conviction meets that definition." *Id.* On this point, we give some degree of deference to the BIA. *See Marmolejo-Campos*, 558 F.3d at 907–11. Here, in the absence of a precedential BIA decision on point, we defer to the BIA "to the extent that [the BIA's decision] has the power to persuade." *Latter-Singh v. Holder*, 668 F.3d 1156, 1160 (9th Cir. 2012); *see also Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

Applying these principles to Nguyen's case, we find no error in the BIA's determination that Nguyen is inadmissible for having been convicted of a crime involving moral turpitude. On the contrary, we agree with the BIA that Nguyen's conviction for misuse of a passport to facilitate an act of international terrorism, under 18 U.S.C. § 1544, is a conviction for a crime involving moral turpitude.[3]

---

[3] Because Nguyen's § 1544 conviction renders him inadmissible, we need not decide whether the BIA alternatively found Nguyen inadmissible due to his conviction for spousal abuse under California Penal Code § 273.5(a).

The BIA did not err in identifying the elements of Nguyen's § 1544 conviction. Though Nguyen argues otherwise, the intent to facilitate an act of international terrorism is an element of his offense. "Any fact that, by law, increases the penalty for a crime is an 'element' . . . ." *Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013); *see also Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Because Nguyen pled guilty "as charged in Count 1 of the Single-Count Indictment," he pled guilty to misuse of a passport "to facilitate an act of international terrorism, as defined in Title 18, United States Code, Section 2331(1)." *See United States v. Vidal*, 504 F.3d 1072, 1087 (9th Cir. 2007) (en banc). This intent to facilitate an act of international terrorism, in turn, increased the maximum criminal penalty to which Nguyen was exposed: § 1544 prescribes a maximum fifteen-year prison term in most cases, but a maximum twenty-five year prison term "if the offense was committed to facilitate an act of international terrorism (as defined in section 2331 of this title)." Because the intent to facilitate an act of international terrorism increased the criminal penalty to which Nguyen was exposed, the BIA was correct that the intent to facilitate an act of international terrorism is an element of Nguyen's conviction.

The next question is whether we are persuaded, *see Latter-Singh*, 668 F.3d at 1160, that misuse of a passport with the intent "to facilitate an act of international terrorism (as defined in section 2331 of this title)" is categorically morally turpitudinous. We are.

Misuse of a passport to facilitate an act of international terrorism is categorically a crime involving moral turpitude. "[N]on-fraudulent crimes of moral turpitude almost always involve an intent to harm someone, the actual infliction of

harm upon someone, or an action that affects a protected class of victim." *Nunez v. Holder*, 594 F.3d 1124, 1131 (9th Cir. 2010). Misuse of a passport "to facilitate an act of international terrorism (as defined in section 2331 of this title)" categorically involves at least the first and third of these criteria. Section 2331 defines "international terrorism" to require "violent acts or acts dangerous to human life," § 2331(1)(A) — making it clear that anyone misusing a passport with the intent to facilitate an act of international terrorism necessarily holds "an intent to harm someone," *Nunez*, 594 F.3d at 1131. Likewise, § 2331 defines international terrorism to require the intent "to intimidate or coerce a civilian population," "to influence the policy of a government by intimidation or coercion," or "to affect the conduct of a government by mass destruction, assassination, or kidnapping," § 2331(1)(B)(i)–(iii). From this, it is clear that anyone misusing a passport to facilitate an act of international terrorism necessarily targets "a protected class of victim," *Nunez*, 594 F.3d at 1131 — either a vulnerable civilian population, or that civilian population's lawful government. And, like other crimes involving moral turpitude, misuse of a passport to facilitate an act of international terrorism "shocks the conscience." *Id*. at 1136. Indeed, shocking the public conscience is the whole point of using terrorism as a tool of political coercion.

In short, the BIA was correct that Nguyen is inadmissible because he has been convicted of a crime involving moral turpitude: Nguyen has been convicted of misuse of a passport to facilitate an act of international terrorism, and misuse of a

passport to facilitate an act of international terrorism is categorically a crime involving moral turpitude.[4]

## II.  Whether Nguyen Is Entitled to Protection Under CAT

Though we generally lack jurisdiction to review orders of removal based on a conviction of a crime involving moral turpitude, 8 U.S.C. § 1252(a)(2)(C), we retain jurisdiction to review denials of deferral of removal under CAT, *Lemus-Galvan v. Mukasey*, 518 F.3d 1081, 1083 (9th Cir. 2008).  We review the factual findings underlying the BIA's denial of CAT relief for substantial evidence.  *Zheng v. Ashcroft*, 332 F.3d 1186, 1193 (9th Cir. 2003).  "The 'substantial evidence' standard of review means we must be deferential to the BIA's conclusions.  But deference does not mean blindness."  *Li v. Ashcroft*, 356 F.3d 1153, 1158 (9th Cir. 2004) (en banc).  We will reverse, under the substantial evidence standard, if "the evidence in the record compels a reasonable factfinder to conclude that the BIA's decision is incorrect."  *Tampubolon v. Holder*, 610 F.3d 1056, 1059 (9th Cir. 2010) (alteration and internal quotation marks omitted); *see also* 8 U.S.C § 1252(b)(4)(B).

In denying Nguyen's CAT claim, the BIA contended that Nguyen "does not point to any substantial evidence corroborating his fear that the Vietnamese authorities have become aware of his conviction in the Philippines or his other public activities in opposition to the Vietnamese regime;

---

[4] We need not and do not decide whether a § 1544 conviction with different elements — without the intent "to facilitate an act of international terrorism" present here — would constitute a crime involving moral turpitude.

rather, [Nguyen] seems to *assume* such awareness." Thus, the BIA discounted "the fact that many political dissidents are imprisoned under harsh conditions" in Vietnam: if the Vietnamese government could not identify Nguyen as a political dissident, it would not matter whether the Vietnamese government tortured political dissidents. In this light, the BIA concluded that — though country conditions evidence "certainly demonstrates that torture sometimes occurs in Vietnam" — the evidence "does not establish that such severe physical mistreatment is a common occurrence, or that it would more likely than not be inflicted on [Nguyen] personally."

These aspects of the BIA's decision are not supported by substantial evidence. On the contrary, the evidence in the record compels any reasonable factfinder to conclude that the Vietnamese government is aware of Nguyen's activities on behalf of the Government of Free Vietnam. Because the Vietnamese government is aware of Nguyen's activities on behalf of the Government of Free Vietnam, the record likewise compels any reasonable factfinder to conclude that, if Nguyen is removed to Vietnam, he is more likely than not to be tortured.

The BIA's doubts "that the Vietnamese authorities have become aware of [Nguyen's] conviction in the Philippines or his other public activities in opposition to the Vietnamese regime" are not supported by substantial evidence. The record leaves no room to doubt that the Vietnamese government knows who Nguyen is, and what he has done in the name of the Government of Free Vietnam. For example, the record contains a report from the Vietnamese government to Interpol describing the circumstances of Nguyen's arrest in the Philippines, and providing detailed information about

Nguyen's personal history.  Likewise, the record contains an FBI agent's sworn statement that the details of Nguyen's alleged bomb plot were "obtained from the Government of Vietnam."  In fact, during Nguyen's removal proceedings, the U.S. Government's own expert recognized that Nguyen's case "has been so widely known" that the Vietnamese government would be able to recognize Nguyen as soon as he arrived in Vietnam.  In the face of this uncontroverted evidence, no reasonable factfinder could doubt that the Vietnamese government has actual knowledge of Nguyen's activities in opposition to the Vietnamese regime — including, for example, Nguyen's alleged plot to bomb the Vietnamese embassy in the Philippines.[5]

Because the Vietnamese government is familiar with Nguyen and his activities on behalf of the Government of Free Vietnam, the record also compels the conclusion that, if Nguyen is removed to Vietnam, he is more likely than not to be tortured.

The record shows that the Vietnamese government routinely arrests and imprisons members of the Government of Free Vietnam.  As a high-profile member of the

---

[5] It would have been very surprising if the Vietnamese government were not aware of the circumstances surrounding Nguyen's arrest in the Philippines.  As one would expect, the Vietnamese government has shown an intense interest in the Government of Free Vietnam's attacks against Vietnamese targets:  the record shows that Hanoi has made such attacks a prominent sticking point in Vietnam's relations with the United States, and has repeatedly asked foreign countries to extradite members of the Government of Free Vietnam who were accused of involvement in those attacks.  The record also shows that Nguyen's alleged bomb plot, in particular, attracted widespread attention from the international news media.

Government of Free Vietnam — known, in particular, for allegedly plotting to bomb a Vietnamese embassy — Nguyen is thus likely to be imprisoned if he is removed to Vietnam.

Once Nguyen is imprisoned in Vietnam, the record compels the conclusion that he is likely to be tortured. Though the BIA was skeptical that "severe physical mistreatment is a common occurrence" in Vietnam, the State Department's 2008 Human Rights Report on Vietnam makes clear that severe physical mistreatment is not uncommon in Vietnamese custody at all: "police commonly physically mistreated suspects during arrest or detention." Physical mistreatment of the kind documented in Vietnamese custody — for example, "beatings and electric shock" — constitutes torture. *See* 8 C.F.R. § 208.18(a)(4)(i) ("The intentional infliction . . . of severe pain or suffering" constitutes torture.). The political nature of Nguyen's offenses underscores the likelihood that Nguyen will be tortured in custody: as the 2008 Human Rights Watch report in the record notes, "there is compelling evidence of torture and ill-treatment of political prisoners" in Vietnam, in particular.

Though "[t]orture does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions," 8 C.F.R. § 208.18(a)(3), the pain or suffering that Vietnam is likely to inflict on Nguyen would not constitute a lawful sanction. According to the State Department's 2008 Human Rights Report, Vietnamese law "prohibits physical abuse."

Such documentary evidence of country conditions, alone, is sufficient to show that Nguyen is likely to be tortured in Vietnam. *See Kamalthas v. INS*, 251 F.3d 1279, 1280 (9th Cir. 2001) ("[C]ountry conditions alone can play a decisive

role in granting [CAT] relief."). But Nguyen does not rely on documentary evidence alone.

In addition to Nguyen's country conditions evidence, the witness testimony that Nguyen presented during removal proceedings underscores that he is likely to be tortured if he is removed to Vietnam. Nguyen presented testimony from two witnesses who knew political prisoners in Vietnam. Both witnesses testified that these political prisoners were deliberately subjected to physical harm. In at least two cases, Vietnamese officials subjected these political prisoners to physical harm in an effort to coerce them into offering false confessions — a practice that certainly constitutes torture. *See* 8 C.F.R. § 208.18(a)(1). Moreover, Nguyen presented testimony from two witnesses who were actually former political prisoners in Vietnam — and who, again, were deliberately subjected to severe physical harm rising to the level of torture. One of these witnesses was deprived of adequate food and water, and watched a fellow prisoner starve to death under similar conditions. The other witness was beaten so badly that she was left permanently disabled. Such severe pain and suffering constitutes torture. *See id*.

The Government presented no evidence that could, in the mind of a reasonable factfinder, rebut Nguyen's evidence that he is likely to be tortured. The Government's sole witness in the removal proceedings, a retired Harvard Law School research fellow, offered three reasons for his opinion that Nguyen was unlikely to be tortured in Vietnam. None of these reasons, however, is actually responsive to the other record evidence showing that the Vietnamese government tortures political opponents like Nguyen. At most, the research fellow offered reasons that Vietnam *should not* torture political opponents like Nguyen; he did not contradict

the record evidence showing that Vietnam *actually does* torture its political opponents.

First, the research fellow argued that the Vietnamese government is unlikely to torture Nguyen because torture is against the law in Vietnam. But the fact that a country's laws formally prohibit torture says nothing about whether that country actually tortures people. *See Hosseini v. Gonzales*, 471 F.3d 953, 960 (9th Cir. 2006) (noting that the Iranian constitution prohibits torture, and that the Iranian government tortures people).

Second, the research fellow concluded that the Vietnamese government would not "need" to torture Nguyen, because Nguyen would not withhold information when interrogated by the Vietnamese government. This conclusion is striking, in the first place, for the implication that the Vietnamese government *would* torture Nguyen if he *did* withhold information — or if he were perceived to be withholding information. But, more to the point, evidence in the record shows that the Vietnamese government actually does torture political prisoners — without regard for whether the Vietnamese government "needs" to torture those political prisoners. Indeed, the record shows that the Vietnamese government tortures political prisoners for multiple reasons — for example, to obtain false confessions and to punish its political opponents — that have nothing to do with any "need" to extract information about potential threats to Vietnamese security.

Third, the research fellow noted that torture might sully the Vietnamese government's domestic and international reputation. But here again, speculation that the Vietnamese government has reasons not to engage in torture cannot

counter the Vietnamese government's actual practice of torturing people. The suggestion that torture is not in Vietnam's best interest does nothing to contradict evidence showing that Vietnam actually does torture people, whether that decision is in Vietnam's best interest or not.

In short, there is no evidence that Vietnam will not torture Nguyen upon his arrest there, which is virtually certain. There is substantial documentary and testimonial evidence — including, by negative implication, testimony from the government's own expert — that he most likely *would* be tortured. (Notwithstanding the BIA's contrary determination, the record compels the conclusion that "severe physical mistreatment" rising to the level of torture "is a common occurrence" in Vietnamese custody, particularly where the Vietnamese government's political opponents are concerned.) Therefore, the record compels the conclusion that, because "the Vietnamese authorities have become aware of [Nguyen's] . . . public activities in opposition to the Vietnamese regime," Nguyen is likely to be arrested, detained and tortured in Vietnam. Because the record compels the conclusion that the Vietnamese government will recognize Nguyen as one of its political opponents, and that it tortures its political opponents, the record compels the conclusion that Nguyen is more likely than not to be tortured if he is removed to Vietnam.

Indeed, Nguyen's case is very similar to a previous case in which we ordered CAT relief. In *Hosseini v. Gonzales*, we considered whether a member of the Mujahedin-e Khalq — a terrorist group opposed to the Iranian government — could be removed to Iran, or whether he was instead entitled to deferral of removal under CAT. 471 F.3d at 959–61. In *Hosseini*, there was no direct evidence that — to quote

language from the BIA's decision in Nguyen's case — torture "would more likely than not be inflicted on the respondent personally." Nevertheless, there was evidence that the Iranian government was likely to identify Hosseini as a member of the Mujahedin-e Khalq, and that the Iranian government tortured its political opponents — including members of the Mujahedin-e Khalq. *Id*. at 959–60. We thus concluded that Hosseini was entitled to deferral of removal under CAT. *Id*. at 960–61.

We see little to distinguish Nguyen's case from *Hosseini*. In *Hosseini*, it seemed likely that the Iranian government would discover Hosseini's activities on behalf of the Mujahedin-e Khalq. *Id*. at 960. Here, there is no doubt that the Vietnamese government is already aware of Nguyen's activities on behalf of the Government of Free Vietnam. In *Hosseini*, there was evidence that Iran tortures its political opponents — like members of the Mujahedin-e Khalq. *Id*. Here, there is evidence that Vietnam tortures its political opponents — like members of the Government of Free Vietnam. (If anything, Nguyen offers *more* evidence than was offered in *Hosseini*: Nguyen corroborates his documentary evidence of Vietnam's country conditions with live witness testimony illustrating the plight of Vietnamese political prisoners. Hosseini, by contrast, relied on documentary evidence alone. *See id*. at 959–60.) Here, as in *Hosseini*, the country of removal will recognize the Petitioner as one of its political opponents. Here, as in *Hosseini*, the country of removal tortures its political opponents. Thus, here — as in *Hosseini* — we conclude that the Petitioner is entitled to deferral of removal under CAT.

We respect the dissent's concern for the proper application of *INS v. Ventura*, 537 U.S. 12 (2002) (per

curiam), but we believe that concern is misplaced here. We reach only questions that the BIA has already fully considered in the first instance: we have "giv[en] the BIA the opportunity to address the matter in the first instance in light of its own expertise." *Ventura*, 537 U.S. at 17. That the BIA's rejection of Nguyen's CAT claim is unsupported by substantial evidence does not change the fact that the BIA has fully considered Nguyen's CAT claim on the merits.

This is not a case where the BIA previously evaluated the record evidence under the wrong legal standard, and must be given an opportunity to evaluate that evidence under the correct standard in the first instance. *Cf. Lopez v. Ashcroft*, 366 F.3d 799, 805–07 (9th Cir. 2004). The issue here is not whether the BIA's legal reasoning was erroneous, but whether the factual findings underlying the BIA's decision are supported by substantial evidence. Where the BIA got the law right, but failed to recognize that the record compels a particular finding of fact, we need not remand for further fact-finding. *See, e.g.*, *Hosseini*, 471 F.3d at 961.

"Because the agency has already brought 'its expertise to bear upon the matter' and 'evaluate[d] the evidence,' this case requires no further remand for the application of agency expertise or for agency evaluation." *Smolniakova v. Gonzales*, 422 F.3d 1037, 1052 (9th Cir. 2005) (internal citation omitted) (quoting *Ventura*, 537 U.S. at 17). Accordingly, we remand only so that Nguyen be granted deferral of removal under CAT.

## CONCLUSION

The BIA did not err in determining that Nguyen was convicted of a crime involving moral turpitude: Nguyen was

convicted of misuse of a passport to facilitate an act of international terrorism, and misuse of a passport to facilitate an act of international terrorism is categorically morally turpitudinous. Thus, we DENY Nguyen's petition for review of the BIA's decision in that respect.

Nevertheless, the record compels the conclusion that Nguyen is more likely than not to be tortured if he is removed to Vietnam. Thus, we GRANT the petition for review with respect to Nguyen's CAT claim, and REMAND with instructions that Nguyen be granted deferral of removal under CAT.

The parties shall bear their own costs.

**Petition No. 10-71050 DENIED in part; GRANTED in part; REMANDED with instructions.**

---

TALLMAN, Circuit Judge, concurring in part and dissenting in part:

I respectfully dissent from Part II of today's opinion.

The Immigration Judge conducted a two-day evidentiary hearing on the merits of Vinh Tan Nguyen's CAT protection claim. After considering the evidence, he issued a 35-page decision denying relief. The Board of Immigration Appeals, in its own lengthy order, also concluded that Nguyen failed to prove that he would more likely than not be tortured if returned to Vietnam. This is an unusually thorough and carefully explicated agency decision.

My colleagues disagree with the IJ and BIA. I think it's close. But, under the substantial evidence standard of review, close isn't good enough. Rather, we may part ways with the BIA only if the record evidence would *compel* a reasonable adjudicator to do so. *See Tampubolon v. Holder*, 610 F.3d 1056, 1059 (9th Cir. 2010); 8 U.S.C. § 1252(b)(4)(B).

The majority believes that the Vietnamese government knows about Nguyen's activities with the Government of Free Vietnam (GFVN). Even if Vietnam is aware of Nguyen's opposition activities, the BIA provided several persuasive reasons why Nguyen failed to show that he would more likely than not be tortured.

First, the BIA observed that the IJ found "little evidence that Vietnam considers the GFVN to be a significant threat." Indeed, a Harvard-trained expert on Vietnam's country conditions and legal system testified that Vietnam viewed Nguyen's organization as "a joke" and would not torture Nguyen. That is certainly substantial evidence.

Second, the BIA relied on the IJ's finding that, although some GFVN members have been arrested and subjected to harsh prison conditions in Vietnam, those individuals were detained for reasons other than their GFVN membership. They were arrested, for example, for engaging in human rights advocacy while in Vietnam on behalf of the United States International Mission. The majority ignores the reasons why these GFVN members were arrested. By doing so, the majority makes it seem more likely that Nguyen will be detained because of his involvement with the GFVN. Maj. Op. at 16–17 (concluding that because "the Vietnamese government routinely arrests and imprisons members of the [GFVN]," and Nguyen is a known member of the GFVN,

"Nguyen is [] likely to be imprisoned if he is removed to Vietnam."). As the BIA and IJ explain, that causal link is simply not supported by the record.

Finally, the BIA agreed with the IJ's conclusion that the harsh treatment experienced by some political prisoners in Vietnam "did not so frequently rise to the level of 'torture' that [Nguyen] could be presumed to face such extreme treatment" in Vietnam. The majority disagrees. It cites evidence that certainly indicates that torture sometimes occurs in Vietnam. But the BIA recognized as much. The BIA concluded, however, that the record evidence "does not establish that such severe physical mistreatment is a common occurrence, or that it would more likely than not be inflicted on [Nguyen] personally." The existence of occasional acts of torture does not compel the conclusion that Nguyen would more likely than not be tortured.[1]

In post-REAL ID Act cases like this one, we must be particularly diligent in according appropriate deference to the BIA by limiting our review to substantial evidence. The immigration courts of the Executive Branch earn that

---

[1] Even if I agreed with my colleagues on the merits, I disagree with their decision to remand with instructions to grant Nguyen CAT relief. Rather, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *INS v. Ventura*, 537 U.S. 12, 16 (2002) (quotations and citations omitted). This is particularly appropriate here where the majority supports its conclusion with country report data that is nearly six years old. *See Lopez v. Ashcroft*, 366 F.3d 799, 806 (9th Cir. 2004) ("[R]emand could lead to the presentation of further evidence of current circumstances in [the country of removal] – evidence that may well prove enlightening . . . in light of the more than five years that have passed since the 1998 State Department Country Report, relied on by the BIA, was written.").

deference with their unique expertise "in evaluating torture claims, particularly those arising under CAT." *Huang v. Ashcroft*, 390 F.3d 1118, 1123 (9th Cir. 2004). They also bear responsibility "for ensuring that decisions about [CAT relief] are uniform and consistent." *Id.* For this reason, we have been cautioned not to "intrude upon the domain which Congress has exclusively entrusted to an administrative agency." *Ventura*, 537 U.S. at 16 (internal quotations omitted). Here, the lengthy decisions on review demonstrate that the agency carefully considered the relief sought under the Treaty. I am unwilling to assume the Executive Branch is derelict in its duties when such a full and complete explanation evaluating all of the evidence accompanies the decision to deny relief.

The petition as to CAT relief should be denied.