**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NATIVIDAD DE JESUS DURAN ESCOBAR,

*Petitioner*,

v.

LORETTA E. LYNCH, Attorney General,

*Respondent.*

No. 12-70930

Agency No. A075-707-335

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 8, 2016
Pasadena, California

Filed January 20, 2017

Before: Marsha S. Berzon, Morgan B. Christen,
and Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Christen

## SUMMARY[*]

### Immigration

The panel granted Natividad De Jesus Duran Escobar's petition for review of the Board of Immigration Appeals' decision finding her ineligible for cancellation of removal because her conviction for witness tampering under California Penal Code § 136.1(a) was a categorical crime involving moral turpitude, and remanded.

The panel held that the Immigration Judge and BIA erred by finding CPC § 136.1(a) a categorical CIMT, because the offense is overly broad and not a categorical match to the generic definition of a CIMT.

The panel granted Duran's petition with respect to her application for cancellation, and remanded for the Agency to consider whether CPC § 136.1(a) is divisible and, if so, to conduct the modified categorical analysis. The panel noted that on appeal the parties did not brief the divisibility issue, and that the BIA had not reached the modified categorical approach. The panel wrote that although it could reach the question of divisibility sua sponte because the BIA is not entitled to deference when interpreting criminal statutes, it was declining to do so.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Susan Elizabeth Hill (argued), Hill and Piibe, Los Angeles, California, for Petitioner.

Yanal H. Yousef (argued), Trial Attorney; M. Jocelyn Lopez Wright, Senior Litigation Counsel; Leslie McKay, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

CHRISTEN, Circuit Judge:

This immigration case turns on whether California Penal Code section 136.1(a), California's witness tampering statute, is a categorical crime involving moral turpitude. Petitioner Natividad De Jesus Duran Escobar (Duran) is a native and citizen of El Salvador, who fled to the United States after several encounters with guerrillas in the 1980s. An Immigration Judge (IJ) denied Duran's application for cancellation of removal, concluding that she was ineligible because her conviction for witness tampering under section 136.1(a) was a categorical crime involving moral turpitude. Duran appealed, the Board of Immigration Appeals (BIA) affirmed, and Duran timely filed a petition for review.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). We grant the petition with respect to Duran's application for cancellation of removal because the IJ and BIA failed to consider the broad definition of "malice" in California Penal Code section 136, which indicates that the offense is not a

categorical match to the generic definition of a crime involving moral turpitude.

## BACKGROUND

Duran is a native and citizen of El Salvador. She entered the United States without inspection on October 4, 1989. Duran applied for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT) on July 19, 2000, alleging that she and her family "were mistreated and threatened by the guerrillas" in El Salvador in the 1980s. An asylum officer declined to grant the application, and on September 11, 2000, the Department of Homeland Security served her with a Notice to Appear (NTA). The NTA charged Duran with being removable because she was present in the United States without being admitted or paroled under section 212 (a)(6)(A)(i) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(a)(6)(A)(i). Duran admitted removability, but applied for cancellation of removal based on hardship to her minor U.S. citizen son, Carlos.[1]

The IJ ruled that Duran is statutorily ineligible for cancellation of removal because she was previously convicted of a crime involving moral turpitude (CIMT). On April 19, 2001, Duran pleaded no contest to violating California Penal Code section 136.1(a), California's witness tampering statute.

---

[1] Carlos was eight years old when Duran initially applied for cancellation of removal, but he was seventeen by the time of the hearing before the IJ in 2010. When Duran applied for cancellation of removal, she also renewed her requests for asylum, withholding of removal, and CAT protection. The IJ denied these applications, and the BIA affirmed. We address Duran's petitions for review of these issues in a memorandum disposition filed concurrently with this opinion.

She was sentenced to sixty days in county jail and two years supervised release. The IJ concluded that section 136.1(a) is categorically a CIMT because malice is an element of the offense. The IJ did not hear the full testimony regarding Duran's application for cancellation of removal because the IJ deemed her statutorily ineligible.[2] Duran timely appealed to the BIA. The BIA, in an unpublished opinion, affirmed the IJ's conclusion that Duran was ineligible for cancellation of removal due to her previous conviction.

## DISCUSSION

"The determination whether a conviction under a criminal statute is categorically a crime of moral turpitude involves two steps, to which different standards of review apply." *Castrijon-Garcia v. Holder*, 704 F.3d 1205, 1208 (9th Cir. 2013) (alterations omitted) (quoting *Uppal v. Holder*, 605 F.3d 712, 714 (9th Cir. 2010)). "The first step is to identify the elements of the statute of conviction," and, because the BIA "has no special expertise by virtue of its statutory responsibilities in construing state or federal criminal statutes," we review the first step de novo. *Id.* (quoting *Uppal*, 605 F.3d at 714).

"The second step is to compare the elements of the statute of conviction to the generic definition of a crime of moral turpitude and decide whether the conviction meets that definition." *Id.* "Because the BIA does have expertise in making this determination, we defer to its conclusion if warranted" under either *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) or

---

[2] Carlos was present and willing to testify, but because the IJ did not reach the merits of Duran's cancellation claim, Carlos did not testify.

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). *Id.* (quoting *Uppal*, 605 F.3d at 714). *Chevron* applies "if the decision is a published decision (or an unpublished decision directly controlled by a published decision interpreting the same statute)," while *Skidmore* governs "if the decision is unpublished (and not directly controlled by any published decision interpreting the same statute)." *Id.* (quoting *Uppal*, 605 F.3d at 714).

## I. Generic Definition of a Crime Involving Moral Turpitude

Under 8 U.S.C. § 1229b(b)(1), the Attorney General "may cancel removal of . . . an alien who is inadmissible or deportable from the United States if the alien—

> (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;

> (B) has been a person of good moral character during such period;

> (C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and

> (D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a

citizen of the United States or an alien lawfully admitted for permanent residence."**³**

Section 1182(a)(2) specifies that any alien convicted of "a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime" is inadmissible. 8 U.S.C. § 1182(a)(2)(A)(i). "Although the immigration statutes do not specifically define offenses constituting crimes involving moral turpitude, a crime involving moral turpitude is generally a crime that '(1) is vile, base, or depraved and (2) violates accepted moral standards.'" *Latter-Singh v. Holder*, 668 F.3d 1156, 1161 (9th Cir. 2012) (quoting *Saavedra-Figueroa v. Holder*, 625 F.3d 621, 626 (9th Cir. 2010)).

"Crimes of moral turpitude are generally 'of two types: those involving fraud and those involving grave acts of baseness or depravity.'" *Rivera v. Lynch*, 816 F.3d 1064, 1074 (9th Cir. 2016) (quoting *Castrijon-Garcia*, 704 F.3d at 1212). "[F]raud crimes are categorically crimes involving moral turpitude, simply by virtue of their fraudulent nature." *Linares-Gonzalez v. Lynch*, 823 F.3d 508, 514 (9th Cir. 2016) (alteration in original) (quoting *Planes v. Holder*, 652 F.3d 991, 997 (9th Cir. 2011)). "Non-fraudulent CIMTs will almost always involve an intent to injure someone, an actual injury, or a protected class of victims." *Turijan v. Holder*, 744 F.3d 617, 621 (9th Cir. 2014).

---

**³** The IJ did not address whether Duran established "unusual hardship" under 8 U.S.C. § 1229b(b)(1)(D) because the IJ found she was convicted of a CIMT under subsection (C). We likewise to do not address the issue.

"In determining whether an offense is a CIMT, the BIA has examined 'whether the act is accompanied by a vicious motive or a corrupt mind' because 'evil or malicious intent is . . . the essence of moral turpitude.'" *Linares-Gonzalez*, 823 F.3d at 514 (alteration in original) (quoting *Latter-Singh*, 668 F.3d at 1161). But "where a protected class of victim is involved, such as children or individuals who stand in a close relationship to the perpetrator, both the BIA and this court have been flexible about the intent 'requirement,' extending the category of crimes of moral turpitude to encompass even unintentional acts that only threaten harm." *Nunez v. Holder*, 594 F.3d 1124, 1131 n.4 (9th Cir. 2010).

## II. The Categorical Approach

To determine "whether the conduct proscribed by the statute involves moral turpitude," this court and the BIA apply the "categorical approach" of *Taylor v. United States*, 495 U.S. 575, 598–602 (1990), "comparing the elements of the state offense to those of the generic CIMT to determine if there is a categorical match." *Linares-Gonzalez*, 823 F.3d at 514 (citing *Descamps v. United States*, 133 S. Ct. 2276, 2283–86 (2013)). To show that the state offense is broader than the generic definition of a CIMT, and thus not a categorical match, the applicant must demonstrate that there is "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of moral turpitude." *Turijan*, 744 F.3d at 620 (quoting *Nunez*, 594 F.3d at 1129). "If the statute has been applied in at least one previous case to conduct that does not satisfy the generic definition, then the offense is not a categorical CIMT." *Id.* at 620–21 (citing *Castrijon-Garcia*, 704 F.3d at 1214–15).

*A.  Elements of the State Offense*

California Penal Code section 136.1(a) states:

> (a) Except as provided in subdivision (c), any person who does any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison:

> (1) Knowingly and maliciously prevents or dissuades any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law.

> (2) Knowingly and maliciously attempts to prevent or dissuade any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law.

> (3) For purposes of this section, evidence that the defendant was a family member who interceded in an effort to protect the witness or victim shall create a presumption that the act was without malice.

Cal. Penal Code § 136.1(a).  The elements of witness intimidation in California are: (1) knowingly and maliciously (2) preventing or dissuading or attempting to prevent or dissuade (3) a victim or a witness (4) from attending or giving testimony at any trial, proceeding, or inquiry authorized by law.  Judicial Counsel of California Criminal Jury Instructions (CALCRIM) No. 2622; *see also People v.*

*Wahidi*, 166 Cal. Rptr. 3d 416, 418–19 (Ct. App. 2013). Section 136 borrowed the American Bar Association (ABA) model statute for witness intimidation's definition of "malice" as "an intent to vex, annoy, harm, or injure in any way another person, or to thwart or interfere in any manner with the orderly administration of justice." Cal. Penal Code § 136(1); *Wahidi*, 166 Cal. Rptr. 3d at 420.

The IJ concluded that a violation of section 136.1(a) is a categorical CIMT because it uses the word "maliciously." The IJ reasoned: "Each of the elements of the California Section used the term malicious and thus, I see no legal room to define the crime other than one involving elements of moral turpitude." The BIA agreed with the IJ and emphasized that section 136.1(a) requires the "specific intent to knowingly and maliciously intimidate a witness." Neither the BIA nor the IJ cited or discussed the California statute's definition of "malice" in reaching this conclusion. On appeal, Duran argues that the BIA and IJ erred by failing to consider the statute's definition, which demonstrates the statute would apply to conduct that falls outside the generic definition of moral turpitude. We agree.

## B. *Level of Deference*

First, we conclude that the BIA's decision is not entitled to *Chevron* deference with regard to its interpretation of the CIMT provision. "*Chevron* deference is afforded to an unpublished decision only when it is 'directly controlled by a published decision interpreting the same statute.'" *Castrijon-Garcia*, 704 F.3d at 1210 (quoting *Uppal*, 605 F.3d at 714). Although the BIA's unpublished decision cites to published decisions, none interprets 8 U.S.C. § 1182(a)(2) as applied to California Penal Code section 136.1, and thus none

directly controls. *See id.* Where, as here, *Chevron* deference is inapplicable, *Skidmore* deference may nonetheless apply. "Under *Skidmore*, the weight afforded to the agency decision 'will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" *Id.* at 1211 (quoting *Skidmore*, 323 U.S. at 140). The BIA's decision insofar as it interprets the federal statute within its purview is unpersuasive because it provided little reasoning and the analysis it did provide is troubling.

The BIA observed "that the statute under which [Duran] was convicted . . . falls within the federal definition of obstruction of justice under 18 U.S.C. § 1512(b)(l)." But neither the IJ nor the BIA explained why 18 U.S.C. § 1512(b)(l), the federal crime of witness tampering, is relevant to the categorical analysis for California's witness tampering statute. The IJ cited to a Fifth Circuit case addressing whether a conviction for criminal contempt constitutes an "aggravated felony" under 8 U.S.C. § 1227(a)(2)(A)(iii). *See Alwan v. Ashcroft*, 388 F.3d 507, 514 (5th Cir. 2004). This citation suggests that the IJ and BIA confused the analysis for whether the statute of conviction is a categorical CIMT under 8 U.S.C. § 1182(a)(2) with the analysis for whether a conviction is an aggravated felony under § 1227(a)(2), a separate bar to cancellation of removal. *See* 8 U.S.C. § 1229b(b).[4]

A separate problem is presented by the BIA's use of a more general description of a CIMT as "*contrary to justice*,

---

[4] The government does not contend that Duran's conviction under California Penal Code section 136.1(a) constitutes an aggravated felony.

honesty, principle, or good morals," *Matter of Serna*, 20 I. & N. Dec. 579, 582 (BIA 1992), instead of the two-part generic definition employed by this court and the BIA in its published opinions. *See, e.g.*, *Matter of Ruiz-Lopez*, 25 I. & N. Dec. 551, 551 (BIA 2011) ("We have long held that moral turpitude refers generally to conduct that is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general.").[5]  The BIA also stated, "the fact that a crime does not involve a threat of harm or actual harm does not prohibit a finding that it involves moral turpitude."  The BIA cited to *Matter of Serna* to support this proposition, but *Matter of Serna* involved the fraudulent type of CIMT.  *See* 20 I. & N. Dec. at 585–86.

Finally, the BIA distinguished *Blanco v. Mukasey*, 518 F.3d 714, 720 (9th Cir. 2008), which held that falsely identifying oneself to an officer under California Penal Code section 148.9(a) is not a categorical CIMT, because the California statute at issue in *Blanco* required general as opposed to specific intent.  The BIA emphasized that section 136.1(a) requires the prosecution to prove that "the defendant's acts or statements are intended to affect or influence a potential witness'[s] or victim's testimony or acts." *People v. McDaniel*, 27 Cal. Rptr. 2d 306, 309 (Ct. App. 1994).  But the BIA did not analyze whether this specific intent is sufficiently indicative of a "vicious motive or a corrupt mind" to render section 136.1(a) a categorical CIMT under Ninth Circuit case law or BIA precedent. *Linares-Gonzalez*, 823 F.3d at 514 (quoting *Latter-Singh*, 668 F.3d at 1161).  Nor did the BIA address the reasoning in

---

[5] The IJ, unlike the BIA, did use this standard, generic definition of a CIMT.

*Blanco*, which emphasized that impeding a criminal investigation is not enough to render a crime a categorical CIMT. *See* 518 F.3d at 720.

Because we find the BIA decision unpersuasive in its delineation of the generic definition of a CIMT as applied to obstruction of justice, and because we generally do not defer to the BIA in interpreting state or federal criminal statutes, *see Castrijon-Garcia*, 704 F.3d at 1208, we review de novo whether California Penal Code section 136.1(a) is a categorical CIMT.

## C.  De Novo Review

California Penal Code section 136.1(a) is overly broad and not a categorical CIMT because the statute criminalizes conduct that is not intentionally fraudulent and that does not require "an intent to injure someone, an actual injury, or a protected class of victims." *Turijan*, 744 F.3d at 621.  In *Wahidi*, the California Court of Appeal examined the definition of "malice" in section 136, and noted that the definition is written so broadly that it applies to conduct not traditionally considered malicious.  166 Cal. Rptr. 3d at 420–21.  The court explained that the California Legislature based sections 136 and 136.1 of the California Penal Code on an ABA model statute for witness intimidation and incorporated the model statute's broad definition of the term "malice" with "virtually no changes." *Id.* at 420.[6]

---

[6] The parties dispute the importance of *Rodriguez-Herrera v. INS*, 52 F.3d 238 (9th Cir. 1995), which involved Washington's malicious mischief statute. *Rodriguez-Herrera* held that the Washington statute was not a categorical CIMT due to the statute's broad definition of "malice." 52 F.3d at 240.  But the Washington statute's definition of "malice"

The model statute "provided that the prosecution could show malice in either of two ways: proving the traditional meaning of malice (to vex, annoy, harm, or injure) or proving the meaning of malice that is unique to the statute (to thwart or interfere in any manner with the orderly administration of justice)." *Id.* at 420–21. The court concluded that "[b]y including the latter definition of malice, the Legislature envisioned a relatively broad application of the term." *Id.* at 421. The California Assembly Committee on Criminal Justice bill analysis stated that the statute "may make criminal attempts to settle misdemeanor violations, certain traffic accidents, etc., among the parties without reporting them to the police. Likewise, a person arrested by a civilian (i.e., a shopkeeper) may face criminal charges by trying to talk the shopkeeper into not calling the police." *Id.* (quoting Assemb. Comm. on Criminal Justice, Analysis of Assemb. Bill No. 2909, Reg. Sess., at 2 (1979–1980)).

In *Wahidi*, the defendant "was involved in a physical altercation with Farahan Khan and three other individuals in a parking lot, during which Wahidi punched one of Khan's friends in the face and then broke the windows of Khan's car with a baseball bat while at least one of Khan's friends was sitting in the vehicle." *Id.* at 417. The day before the preliminary hearing "Wahidi approached Khan following prayer services at Khan's mosque," apologized, and asked Khan if they could settle the matter "outside the court in a more Muslim manner family to family" because they were both Muslim. *Id.* "Khan responded sympathetically to Wahidi," "accepted his apology," told the prosecutor about the conversation, and "asked if the case could be handled in

---

differs from that in California Penal Code section 136. *Rodriguez-Herrera* is thus not determinative of the categorical analysis here.

another way." *Id.* "Wahidi never demanded that Khan refrain from testifying or threatened Khan with harm if he were to [go] to court." *Id.*

The California Court of Appeal found that the evidence demonstrated "Wahidi intended to 'thwart or interfere in any manner with the orderly administration of justice'" under the second prong of the "malice" definition in section 136. *Id.* at 419. Because of the statute's "broad" definition, the court held that there "was sufficient evidence to support the finding that Wahidi acted maliciously as well as knowingly under section 136.1 in attempting to persuade Khan from testifying at the preliminary hearing the next day," even though Wahidi did not intend to "vex, annoy, harm, or injure" Khan. *Id.* at 421.

*Wahidi* demonstrates that California would apply California Penal Code section 136.1(a) "to conduct that falls outside the generic definition of moral turpitude." *Turijan*, 744 F.3d at 620 (quoting *Nunez*, 594 F.3d at 1129). Wahidi's actions were not " vile, base, or depraved," and did not violate "accepted moral standards." *Latter-Singh*, 668 F.3d at 1161 (quoting *Saavedra-Figueroa*, 625 F.3d at 626). Likewise, Wahidi did not possess an intent to defraud when he asked Khan if they could settle the matter in accordance with their religious customs. *See Wahidi*, 166 Cal. Rptr. 3d at 417–21. Yet the court still found Wahidi had violated section 136.1(a).

The BIA correctly determined that section 136.1(a) requires a specific intent "to affect or influence a potential witness'[s] or victim's testimony or acts." *McDaniel*, 27 Cal. Rptr. 2d at 309. But the statute does not require the intent to "injure someone, an actual injury, or a protected class of

victims," such as children. *Turijan*, 744 F.3d at 621. Similarly, it does not necessarily "involve base, vile, and depraved conduct that shocks the public conscience." *Id.* (internal quotation marks and alterations omitted) (quoting *Nunez*, 594 F.3d at 1131); *cf. Latter-Singh*, 668 F.3d at 1163 ("The intent to instill great fear of serious bodily injury or death in another constitutes the 'vicious motive or corrupt mind' demonstrative of a crime involving moral turpitude."). Therefore, we conclude, California Penal Code section 136.1(a) is not a categorical match to the generic definition of the non-fraudulent type of CIMT.

Although the government does not argue that section 136.1(a) falls within the generic definition of the fraudulent type of CIMT, we address the issue here to determine if we can uphold the BIA's decision on that ground. Where, as here, the statute of conviction does not explicitly require an intent to defraud, we consider "whether intent to defraud is 'implicit in the nature'" of the crime. *Rivera*, 816 F.3d at 1076 (quoting *Blanco*, 518 F.3d at 719) (holding California perjury statute is overbroad compared to generic definition of a CIMT). "[I]ntent to defraud is implicit in the nature of the crime when the individual makes false statements in order to procure something of value, either monetary or non-monetary." *Blanco*, 518 F.3d at 719; *see also Rivera*, 816 F.3d at 1076–77. "When the only 'benefit' the individual obtains is to impede the enforcement of the law, the crime does not involve moral turpitude." *Blanco*, 518 F.3d at 719.

California Penal Code section 136.1(a) does not require that an individual make false statements nor procure anything of value. The only outcome an individual need obtain is to "thwart or interfere . . . with the orderly administration of justice," Cal. Penal Code § 136, which is insufficient under

*Blanco*, 518 F.3d at 719. Thus, California Penal Code section 136.1(a) does not fall within the fraudulent type of CIMT either. The BIA and IJ thus erred by finding California Penal Code section 136.1(a) a categorical CIMT.

However, Duran's prior conviction for violating section 136.1(a) may still qualify as a CIMT if the statute is divisible and *Shepard*-compliant documents demonstrate that Duran's conviction is a match under the modified categorical approach. *See Rivera*, 816 F.3d at 1077–78 (citing *Descamps*, 133 S. Ct. at 2281); *see also Shepard v. United States*, 544 U.S. 13, 16 (2005). The BIA did not reach the modified categorical approach, and the parties did not brief the divisibility issue on appeal. Although we could reach the question of divisibility sua sponte because the BIA is not entitled to deference when interpreting criminal statutes, we decline to do so.

## CONCLUSION

We remand to the Agency to consider whether California Penal Code section 136.1(a) is divisible and, if so, to conduct the modified categorical analysis.

**PETITION GRANTED and REMANDED.**