**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MOISES RAMIREZ-CONTRERAS,
*Petitioner*,

v.

JEFFERSON B. SESSIONS III, Attorney General,
*Respondent*.

No. 14-70452

Agency No.
A077-301-159

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted February 6, 2017*
Pasadena, California

Filed June 8, 2017

Before: Mary M. Schroeder, Andre M. Davis,**
and Mary H. Murguia, Circuit Judges.

Opinion by Judge Schroeder

---

*The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable Andre M. Davis, United States Circuit Judge for the U.S. Court of Appeals for the Fourth Circuit, sitting by designation.

## SUMMARY[***]

### Immigration

The panel granted Ramirez-Contreras's petition for review of the Board of Immigration Appeals' decision concluding that his conviction for fleeing from a police officer under California Vehicle Code § 2800.2 is categorically a crime involving moral turpitude that rendered him statutorily ineligible for cancellation of removal.

In holding that Ramirez-Contreras's conviction is not a crime of moral turpitude, the panel accorded minimal deference to the BIA's decision due to flaws in its reasoning.

Applying the categorical approach, the panel viewed the least of the acts criminalized under California Vehicle Code § 2800.2, and concluded that an individual can be convicted under subsection (b) for eluding police while committing three traffic violations that cannot be characterized as "vile or depraved." Therefore, the panel held that California Vehicle Code § 2800.2 is not a crime of moral turpitude because the conduct criminalized does not necessarily create the risk of harm that characterizes a crime of moral turpitude.

The panel also held that the modified categorical approach does not apply because the elements of California Vehicle Code § 2800.2 are clearly indivisible.

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Angelica Navarro Sigala and John R. Alcorn, Law Offices of John R. Alcorn, Irvine, California, for Petitioner-Appellant.

Corey L. Farrell, Attorney; Greg D. Mack, Senior Litigation Counsel; Joyce R. Branda, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent-Appellee.

**OPINION**

SCHROEDER, Circuit Judge:

We deal once again with the question of whether a crime of conviction supporting an order of removal was a crime of moral turpitude. Such a conviction renders noncitizens statutorily ineligible for cancellation of removal. 8 U.S.C. § 1229b(b)(1)(C). In this case, Petitioner Moises Ramirez-Contreras was convicted under California law for fleeing from a police officer. The California statute under which he was convicted is similar to many other statutes in that it criminalizes willful flight while driving in a wanton or reckless manner. It is unusual, however, in that it defines such conduct as including driving while violating traffic laws, some of which would not rise to a level of seriousness to qualify as a crime of moral turpitude. Because the test is whether all of the conduct covered by the statute was turpetudinous, we grant the petition.

The California statute is in two parts, with part (a) providing the elements of the crime and part (b) defining the "willful or wanton disregard" element. It states:

(a) If a person flees or attempts to elude a pursuing peace officer in violation of Section 2800.1 and the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property, the person driving the vehicle, upon conviction, shall be punished by imprisonment in the state prison, or by confinement in the county jail for not less than six months nor more than one year. The court may also impose a fine of not less than one thousand dollars ($1,000) nor more than ten thousand dollars ($10,000), or may impose both that imprisonment or confinement and fine.

(b) For purposes of this section, a willful or wanton disregard for the safety of persons or property includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count under Section 12810 occur, or damage to property occurs.

Cal. Vehicle Code § 2800.2

In holding that Petitioner's conviction was a crime of moral turpitude, the Board of Immigration Appeals ("BIA") followed its earlier decision in *Matter of Ruiz-Lopez*, 25 I. & N. Dec. 551 (B.I.A. 2011), which involved conviction under a Washington statute. That statute provided:

> Any driver of a motor vehicle who wilfully fails or refuses to immediately bring his vehicle to a stop and who drives his vehicle in a manner indicating a wanton or wilful disregard for the lives or property of others while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony.

*Matter of Ruiz-Lopez*, 25 I. & N. Dec. at 551 (citing Wash. Rev. Code § 46.61.024).

The Washington statute did not contain the unusual California subsection allowing for conviction on the basis of three traffic violations. Indeed, in our research of other cases in this and other circuits involving statutes criminalizing similar flight conduct, we have found none that contained a provision similar to the California "three violation" definition in subsection (b).

Our court has dealt with the California statute only once, and then in an unpublished, divided, memorandum disposition. *Medina-Nunez v. Lynch*, 607 F. App'x 701 (9th Cir. 2015). While the majority held that the statute defined a crime of moral turpitude, a lengthy dissenting opinion, focusing on subsection (b), reached a different conclusion. We now find ourselves in agreement with the dissent's conclusion.

## BACKGROUND

Petitioner is a native and citizen of Mexico. He first entered the United States in 1998. On July 16, 2000,

Petitioner fled from the police while driving a vehicle, for which he was charged with evading while driving recklessly, in violation of California Vehicle Code § 2800.2, along with other crimes.  Petitioner pleaded guilty to violating § 2800.2, admitting that he was fleeing in willful or wanton disregard for the safety of others.  In March 2001, Petitioner was granted voluntary departure.  He reentered the United States the following month and has remained in the country since then.

On May 20, 2011, Petitioner received a Notice to Appear, which alleged that he was removable as an alien who entered the United States without inspection.  *See* 8 U.S.C. § 1182(a)(6)(A)(i).  Petitioner conceded removability but applied for cancellation of removal pursuant to 8 U.S.C. § 1229b(b), arguing that removal would cause exceptional and extremely unusual hardship to his United States citizen wife and four citizen children.

In briefing to the Immigration Judge ("IJ"), Petitioner sought cancellation of removal, arguing his conviction under § 2800.2 was not a crime of moral turpitude.  On January 9, 2013, the IJ rejected Petitioner's claim, holding that § 2800.2 is categorically a crime involving moral turpitude and that therefore Petitioner was statutorily ineligible for removal under the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(2), 1229b(b)(1)(C).

The BIA, in an unpublished decision, dismissed Petitioner's appeal on January 17, 2014, agreeing with the IJ's analysis that § 2800.2 is categorically a crime involving moral turpitude.  Petitioner timely petitioned for review.

## DISCUSSION

The determination of whether a conviction under a criminal statute is categorically a crime of moral turpitude proceeds in two steps. First, we review the elements of the statute de novo, affording no deference to the BIA's conclusions. *Vinh Tan Nguyen v. Holder*, 763 F.3d 1022, 1027 (9th Cir. 2014). Next, we ask whether the elements of the statute of conviction fall within the generic federal definition of a crime involving moral turpitude. *Id.* In doing so, we presume the conviction rested upon nothing more than the least of the acts criminalized. *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013).

At this second step, we give some degree of deference to the BIA's decision, unless the BIA did not support its decision with any reasoning. *See Rivera v. Lynch*, 816 F.3d 1064, 1071 (9th Cir. 2016). If the BIA relies on a precedential determination in concluding that a crime is one involving moral turpitude, then we apply *Chevron* deference to the BIA's determination. *Id.* at 1070–71 (citing *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). If not, then we defer to the BIA's determination only to the extent that it has the power to persuade. *Id.* at 1071 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Under *Skidmore*, the persuasiveness of the BIA's decision depends on "the thoroughness evident in its consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements." 323 U.S. at 140.

Here, the BIA engaged in extensive analysis of whether California Vehicle Code § 2800.2 qualified as a crime involving moral turpitude, but it did not rely on any directly

controlling BIA authority involving a statute like California's. The BIA instead relied on its earlier, published determination in *Matter of Ruiz-Lopez*, 25 I. & N. Dec. 551, that a Washington state crime for eluding a pursuing police vehicle constituted a categorical crime involving moral turpitude. The Washington statute at issue in *Matter of Ruiz-Lopez*, though, differed from the California statute in this case. That is because while, like the California provision, it criminalized reckless flight, it contained no definition of recklessness, and more notably, nothing that would have allowed recklessness to be proved through acts that, standing alone, were not themselves necessarily dangerous. *See* Wash. Rev. Code § 46.61.024. Because the statute in *Matter of Ruiz-Lopez* materially differs from California Vehicle Code § 2800.2, the BIA's determination in this case is entitled only to *Skidmore* deference.

The extent of that deference in any particular case depends upon the persuasiveness of the agency's reasoning. *See Skidmore*, 323 U.S. at 139. In this case, the BIA's reasoning is not persuasive. The BIA did not discuss or even acknowledge the difference between recklessness under Wash. Rev. Code § 46.61.024 and "willful or wanton disregard" under California Vehicle Code § 2800.2(a), as modified by § 2800.2(b). In looking to California law, the BIA relied on *People v. Sewell*, a California Court of Appeal decision holding that § 2800.2 is an "inherently dangerous felony" despite § 2800.2(b). 80 Cal. App. 4th 690, 694–95 (2000). *Sewell*, however, was subsequently overruled by *People v. Howard*, in which the California Supreme Court held that "subdivision (b) greatly expanded the meaning of [subdivision (a)] to include conduct that ordinarily would not be considered particularly dangerous." 104 P.3d 107, 113 (Cal. 2005). The BIA relied on another California Court of

Appeal decision, *People v. Dewey*, which held that § 2800.2 is a crime involving moral turpitude for impeachment purposes under California evidence law. 42 Cal. App. 4th 216, 222 (1996). Since *Dewey* concerned California law, the court did not consider the federal definition of a crime involving moral turpitude. *See id.* at 218. Lastly, the BIA relied on a series of decisions holding that vehicular flight is a crime of violence. *See Sykes v. United States*, 564 U.S. 1, 16 (2011) *overruled by Johnson v. United States*, 135 S. Ct. 2551 (2015); *United States v. Petite*, 703 F.3d 1290, 1301 (11th Cir. 2013); *United States v. Hudson*, 673 F.3d 263, 267 (4th Cir. 2012); *United States v. Young*, 580 F.3d 373, 378–81 (6th Cir. 2009). A crime of violence, however, is not necessarily the same as a crime involving moral turpitude. *Castrijon-Garcia v. Holder*, 704 F.3d 1205, 1216 (9th Cir. 2013) ("It is not the case that every categorical crime of violence is also categorically a crime involving moral turpitude."). Given these flaws in the BIA's analysis, we accord minimal deference to its determination that § 2800.2 constitutes a categorical crime involving moral turpitude.

In comparing the elements of § 2800.2 to the generic federal definition of a crime involving moral turpitude, "we look to see if the crime is 'vile, base, or depraved' and 'violates accepted moral standards.'" *Almanza-Arenas v. Lynch*, 815 F.3d 469, 476 (9th Cir. 2016) (en banc) (quoting *Ceron v. Holder*, 747 F.3d 773, 779 (9th Cir. 2014) (en banc)); *see also Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1068 (9th Cir. 2007) (noting that federal courts have consistently used this articulation to define crimes involving moral turpitude). Fraud is the prototypical crime of moral turpitude, and the touchstone is intent to harm. *See Turijan v. Holder*, 744 F.3d 617, 621 n.2 (9th Cir. 2014). Thus, we have said that "[n]on-fraudulent [crimes involving moral

turpitude] will almost always involve an intent to injure someone, an actual injury, or a protected class of victims." *Id.* at 621. In *Leal v. Holder*, involving driving while intoxicated, we deferred to the BIA's determination that Arizona's felony endangerment law was a crime involving moral turpitude, even though the crime required only reckless conduct, because the crime created a substantial danger to others. 771 F.3d 1140, 1146 (9th Cir. 2014). Observing that the level of harm was a "substantial, actual risk of imminent death to another person," we held that the creation of such a substantial risk made the crime, in terms of our case law, sufficiently "base, vile, and depraved," so as to make it a crime involving moral turpitude. *Id*.

The statute we deal with here, § 2800.2, lays out its elements in subsection (a). The subsection requires being pursued by a police officer, knowingly "flee[ing] or attempt[ing] to elude" the officer, and driving "in a willful or wanton disregard for the safety of persons or property." Cal. Vehicle Code § 2800.2(a). The "willful or wanton disregard" element, standing alone, would suggest an "intent to injure someone" sufficient to render § 2800.2(a) a categorical crime involving moral turpitude. *See Turijan*, 744 F.3d at 621. It appears to be similar to the Washington statute upon which the BIA relied.

Subsection (b), however, puts a different gloss on the meaning of subsection (a). It provides, in relevant part, that "willful or wanton disregard" can include fleeing a police officer while committing "three or more violations that are assigned a traffic violation point count under Section 12810." Cal. Vehicle Code § 2800.2(b). Under § 12810 of the vehicle code, the "willful or wanton disregard" element can presumably be met by some relatively innocuous sorts of

conduct. Examples include: driving one's own vehicle without the proper vehicle registration, Cal. Vehicle Code § 40001(b)(1); driving one's vehicle that is not in compliance with State Air Resources Board requirements, Cal. Vehicle Code § 40001(b)(5); knowingly driving on a suspended license that was revoked because of prior negligent driving, Cal. Vehicle Code § 14601(a); and failing to stop after an accident involving only property damage, Cal. Veh. Code § 20002(a). Although fleeing police while committing three of these violations would be a serious offense, we have never held that merely serious conduct rises to the level of moral turpitude; instead, we have required conduct posing "a substantial, actual risk of imminent death to another person." *Leal*, 771 F.3d at 1146. The statute at issue here criminalizes a swath of conduct that simply does not rise to that level.

There are decisions in other circuits that have concluded that statutes criminalizing dangerous flight are categorically crimes involving moral turpitude. Yet those statutes differ from § 2800.2 in that they require conscious flight in an especially dangerous manner. In *Mei v. Ashcroft*, for example, the Seventh Circuit concluded that fleeing from police while going twenty-one or more miles over the speed limit was a crime of moral turpitude because "a person who deliberately flees at a high speed from an officer who, the fleer knows, wants him to stop, thus deliberately flouting lawful authority and endangering the officer, other drivers, passengers, and pedestrians, is deliberately engaged in seriously wrongful behavior." 393 F.3d 737, 742 (7th Cir. 2004). Ten years later, the Seventh Circuit relied on *Mei* to find that a Wisconsin flight statute constituted a crime involving moral turpitude when the statute criminalized flight involving dangerous speeding or driving with headlights off. "[I]ncreasing one's speed in an attempt to elude or flee

increases the risk of an accident, as does turning off the lights when done in an attempt to elude or flee or willfully disregarding an officer's signal so as to interfere with or endanger other persons." *Cano-Oyarzabal v. Holder*, 774 F.3d 914, 918 (7th Cir. 2014). The Sixth Circuit, interpreting the Washington statute on which the BIA relied, similarly found that the flight statute constituted a categorical crime involving moral turpitude when the statute penalized dangerous conduct society condemns. *See Ruiz-Lopez v. Holder*, 682 F.3d 513, 521 (6th Cir. 2012) ("The element of 'wanton or willful disregard' clearly fulfills the requisite scienter component, and . . . intentionally fleeing from a police vehicle qualifies as the type of societally condemned, reprehensible conduct that is reasonably encompassed by the BIA's general definition of a [crime involving moral turpitude].").

The statutes in those cases penalized willful conduct that increased the risk of harm to others. Subsection (b) of § 2800.2, by contrast, expressly allows for a finding of "willful or wanton disregard" even where the perpetrator did not flee in an especially dangerous manner.

This is the very difference that divided the majority and dissent in our lone decision addressing whether California Vehicle Code § 2800.2 is categorically a crime involving moral turpitude. *See Medina-Nunez*, 607 F. App'x 701. As an unpublished decision, *Medina-Nunez* is not precedential, *see* 9th Cir. R. 36-3(a), and thus the decision does not bind us. The majority did not extensively discuss subsection (b) and instead focused on subsection (a). *Medina-Nunez*, 607 F. App'x at 702–03. The dissent focused on subsection (b) and concluded that "the less serious manifestations of conduct covered by § 2800.2(b) involve nothing like the level of

potential risk that we and other courts have recognized as involving 'moral turpitude.'"   *Id.* at 704 (Ponsor, J., dissenting).

In addressing the issue for the first time in a precedential opinion, we must first look to the analysis required under Supreme Court precedent.  Under the categorical approach we look to the least of the acts criminalized under the entirety of the statute.  *Moncrieffe*, 133 S. Ct. at 1684.  We next identify the elements of the crime of conviction and compare them with the definition our court has established for a "crime of moral turpitude."  *Almanza-Arenas*, 815 F.3d at 476.  This is conduct we consider to be "vile, base, or depraved" and to "violate[] accepted moral standards."  *Id.* (internal quotation marks omitted).  Viewing the least of the acts criminalized, we see in subsection (b) that an individual can be convicted of violating § 2800.2 on the basis of eluding police while committing three traffic violations that cannot be characterized as "vile or depraved."  We must therefore conclude that the conduct criminalized does not necessarily create the risk of harm that characterizes crimes of moral turpitude, even though subsection (a) standing alone would appear to contain elements of a dangerous crime.

In reaching this conclusion, we do not let the seriousness of any flight from police obscure our analysis of what is morally turpitudinous.   However, "[o]nly truly unconscionable conduct surpasses the threshold of moral turpitude," and so the crime must be "more than serious." *Robles-Urrea v. Holder*, 678 F.3d 702, 708, 710 (9th Cir. 2012). Morally turpitudinous crimes "typically involve rather grave acts of baseness or depravity such as murder, rape, and incest."  *Id.* at 708 (internal quotation marks and citation omitted).  The *Medina-Nunez* dissent noted that our court has

held that many serious crimes nonetheless fell short of moral turpitude's extreme threshold. 607 F. App'x at 705–06. Such crimes include: commission of a felony "for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members," *Hernandez-Gonzalez v. Holder*, 778 F.3d 793, 797 (9th Cir. 2015); simple kidnapping, *Castrijon-Garcia v. Holder*, 704 F.3d 1205, 1214 (9th Cir. 2013); misprision of a felony, *Robles-Urrea*, 678 F.3d at 711; and misdemeanor false imprisonment, *Saavedra-Figueroa v. Holder*, 625 F.3d 621, 626 (9th Cir. 2010). More recently, we have concluded that witness tampering is not categorically a crime involving moral turpitude, *Escobar v. Lynch*, 846 F.3d 1019, 1027 (9th Cir. 2017); nor is identity theft, *Linares-Gonzalez v. Lynch*, 823 F.3d 508, 516 (9th Cir. 2016). We cannot say that eluding police while committing three non-dangerous traffic violations is any more unconscionable than these crimes. Accordingly, we hold that § 2800.2 is not categorically a crime of moral turpitude.

That conclusion is not necessarily determinative of the issue of moral turpitude, because in some situations we may look beyond the statutory terms to the actual conduct underlying the conviction. We do this if the statute is divisible. *Lopez-Valencia v. Lynch*, 798 F.3d 863, 867–68 (9th Cir. 2015). A statute is divisible if it provides "multiple, alternative elements, and so effectively creates several different crimes." *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013) (alteration and internal quotation marks omitted). If divisible, we move to the "modified categorical approach," in which we "examine certain documents from the defendant's record of conviction to determine what elements

of the divisible statute he was convicted of violating." *Lopez-Valencia*, 798 F3d at 868.

In this case we do not apply the modified categorical approach because the elements of § 2800.2 are clearly indivisible. One must (1) be pursued by a police officer; (2) willfully flee from the pursuit; and (3) do so in a manner evidencing willful or wanton disregard for the safety of others. Subsection (b) provides the means of meeting one element, but does not establish an additional, divisible element. We test our analysis of the statutory elements by looking to California jury instructions. *See Almanza-Arenas*, 815 F.3d at 479 (verifying interpretation of elements by whether it is consistent with California jury instruction as to offense). California jury instructions for this offense require the state to prove (1) pursuit by a police officer; (2) the defendant was driving the vehicle with the intent to flee, elude, or evade the officer; and (3) the defendant drove willfully or wantonly in disregard for the safety of persons or property. Judicial Council of Cal. Criminal Jury Instruction 2181. Our analysis is fully consistent with the instruction. Because § 2800.2 has a "single, indivisible set of elements with different means of committing one crime, . . . it is indivisible and we end our inquiry." *See Almanza-Arenas*, 815 F.3d at 476 (internal quotations omitted).

California's Vehicle Code § 2800.2 is not categorically a crime of moral turpitude, and thus, Petitioner is not statutorily ineligible for cancellation of removal.

Petition **GRANTED**.