**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROBERTO ALEXIS LEPE MORAN, *Petitioner*, | No. 18-73167 |
| v. | Agency No. A206-279-913 |
| WILLIAM P. BARR, Attorney General, *Respondent*. | OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 28, 2020
San Francisco, California

Filed June 2, 2020

Before:  J. Clifford Wallace, Ronald Lee Gilman,[*]
and Susan P. Graber, Circuit Judges.

Opinion by Judge Graber

---

[*] The Honorable Ronald Lee Gilman, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

## SUMMARY[**]

---

### Immigration

Denying Roberto Alexis Lepe Moran's petition for review of a Board of Immigration Appeals' decision, the panel held that the BIA permissibly held that Petitioner's conviction for felony vehicular flight from a pursuing police car while driving against traffic, in violation of California Vehicle Code section 2800.4, is categorically a crime involving moral turpitude that made him removable.

The panel described the two-step process for determining whether an offense is a crime involving moral turpitude: the court reviews the elements of the statute de novo and then asks whether those elements fall within the generic federal definition of a crime involving moral turpitude.

At the first step, the panel observed that California Vehicle Code section 2800.4 requires that the defendant, while operating a motor vehicle and with intent to evade, willfully flee or attempt to elude a pursuing peace officer and that, during that flight, the defendant willfully drive his or her vehicle on a highway in a direction opposite traffic.

At the second step, the panel explained that the court defers, to some extent, to the BIA's conclusion that a crime involves moral turpitude, but the panel concluded that it need not decide the appropriate level of deference because, even affording only minimal deference, the BIA's interpretation

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

was correct.  In agreeing with the BIA, the panel explained that the category of non-fraudulent crimes involving moral turpitude includes some crimes that seriously endanger others, even if no actual injury occurs.  The panel further explained that the greater the requisite state of mind, the less serious the resulting harm has to be in order for the crime to be classified as one involving moral turpitude.  Comparing section 2800.4 to relevant precedent, the panel concluded that willfully driving in the wrong direction while fleeing a pursuing police officer inherently creates a risk of harm to others that is substantial enough for the statute categorically to meet the definition of a crime involving moral turpitude.

The panel also rejected Petitioner's contention that the risk of harm to others is insufficient in light of the least of the acts criminalized here.  The panel noted that, in theory, section 2800.4 could apply to a driver who willfully flees from police at ten miles per hour and drives on the wrong side of the road for just five feet.  However, the panel concluded that a highly unlikely theoretical possibility was not enough to remove the statute from the morally turpitudinous realm because: 1) even a short, slow-speed trip in the wrong direction during flight creates substantial risk of harm to others; and 2) a theoretical possibility is insufficient as a matter of law; rather, there must be a "realistic probability" that the state would apply the statute to conduct that falls outside the definition of the generic crime, and the panel concluded that there was no such realistic probability here.

---

**COUNSEL**

Victoria Ayeni (argued) and Nicholas J. Hunt, Certified Law Students; Leah Spero, Gary A. Watt, and Stephen R.

Tollafield, Supervising Counsel; Hastings Appellate Project, San Francisco, California; for Petitioner.

Tim Ramnitz (argued), Attorney; Russell J.E. Verby, Senior Litigation Counsel; Joseph P. Hunt, Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

GRABER, Circuit Judge:

Petitioner Roberto Alexis Lepe Moran, a native and citizen of Mexico, seeks review of a final decision of the Board of Immigration Appeals ("BIA") holding that Petitioner is removable by reason of his conviction of a crime involving moral turpitude. We have jurisdiction over this timely petition for review, 8 U.S.C. § 1252(b), and we deny the petition.

Petitioner was admitted to the United States in 2014 as a nonimmigrant. In 2016, he pleaded guilty in California state court to two crimes arising out of the same incident: violations of California Vehicle Code section 2800.4 (felony vehicular flight from a pursuing police car while driving against traffic) and California Vehicle Code section 20001(b)(1) (felony hit-and-run resulting in injury to another person). He was sentenced to two concurrent sixteen-month terms of imprisonment.

Immigration authorities then issued Petitioner a notice to appear that charged him with being removable. After a

hearing at which he was represented by counsel, an immigration judge ruled that California Vehicle Code section 2800.4[1] is categorically "a crime involving moral turpitude" within the meaning of 8 U.S.C. § 1227(a)(2)(A)(i). Accordingly, the immigration judge held that Petitioner is removable because of his conviction. The BIA agreed with those conclusions and dismissed Petitioner's appeal. The agency also denied Petitioner's requests for asylum, withholding of removal, and protection under the Convention Against Torture.

Before us, Petitioner challenges only the ruling that California Vehicle Code section 2800.4 is categorically a crime involving moral turpitude. To review that determination, we follow a two-step process:

> First, we review the elements of the statute de novo, affording no deference to the BIA's conclusions. *Vinh Tan Nguyen v. Holder*, 763 F.3d 1022, 1027 (9th Cir. 2014). Next, we ask whether the elements of the statute of conviction fall within the generic federal definition of a crime involving moral turpitude. *Id.* In doing so, we presume the conviction rested upon nothing more than the

---

[1] California Vehicle Code section 2800.4 provides for a criminal penalty

> [w]henever a person willfully flees or attempts to elude a pursuing peace officer in violation of Section 2800.1, and the person operating the pursued vehicle willfully drives that vehicle on a highway in a direction opposite to that in which the traffic lawfully moves upon that highway. . . .

least of the acts criminalized. *Moncrieffe v. Holder*, 569 U.S. 184 (2013).

*Ramirez-Contreras v. Sessions*, 858 F.3d 1298, 1302 (9th Cir. 2017).

At the first step, we and the parties agree on the elements of the crime. California Vehicle Code section 2800.4 defines an aggravated version of the crime defined by California Vehicle Code section 2800.1. Section 2800.1 requires that the defendant, "while operating a motor vehicle and with the intent to evade," "willfully" flee or attempt to elude a pursuing peace officer. Section 2800.4 requires *both* that the defendant willfully flee or attempt to elude a pursuing peace officer in violation of section 2800.1 *and* that, during that flight, the defendant "willfully" drive his or her "vehicle on a highway in a direction opposite to that in which the traffic lawfully moves upon that highway." "Willfully" here means intentionally or "on purpose." Jud. Council of Cal. Crim. Jury Instr. 2182 (2019). And a "highway," for purposes of the California Vehicle Code, includes any publicly maintained street. Cal. Veh. Code § 360.

At the second step, we defer, to some extent, to the BIA's conclusion that a crime involves moral turpitude. *Ramirez-Contreras*, 858 F.3d at 1302. Because the BIA's decision here is unpublished, we afford only the deference described in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). *Ramirez-Contreras*, 858 F.3d at 1302–03. The extent of the deference that we grant therefore depends on the thoroughness, consistency, and persuasiveness of the BIA's reasoning. *Id.* at 1303. Petitioner asserts that we owe only "minimal deference," *id.*, to the BIA because its analysis consisted of just a single sentence, followed by citations to cases that

Petitioner contends are not controlling. We need not decide what level of deference we should grant because, even affording only minimal deference, we conclude that the BIA's interpretation is correct. *See Fugow v. Barr*, 943 F.3d 456 (9th Cir. 2019) (per curiam) (addressing a moral-turpitude question without mentioning deference to the BIA).

"In comparing the elements of [section 2800.4] to the generic federal definition of a crime involving moral turpitude, we look to see if the crime is vile, base, or depraved and violates accepted moral standards." *Ramirez-Contreras*, 858 F.3d at 1304 (citations and internal quotation marks omitted). Fraudulent crimes always involve moral turpitude. Non-fraudulent crimes, such as violations of section 2800.4, also can fit the category of moral turpitude. Qualifying non-fraudulent crimes "almost always involve an intent to injure someone, an actual injury, or a protected class of victims." *Id.* (citation and internal quotation marks omitted). But the non-fraudulent category also includes some crimes that seriously endanger others, even if no actual injury occurs. *See, e.g.*, *Fugow*, 943 F.3d at 459 (holding that unlawful imprisonment under Hawaii law is a crime involving moral turpitude, even though no actual injury need occur). We consider the actus reus and the mens rea "in concert to determine whether the behavior they describe is sufficiently culpable to be labeled morally turpitudinous." *Castrijon-Garcia v. Holder*, 704 F.3d 1205, 1214 (9th Cir. 2013) (citation and internal quotation marks omitted).

With respect to the actus reus, an additional element can transform a crime that does not involve moral turpitude into one that does. For example, in *Altayar v. Barr*, 947 F.3d 544 (9th Cir. 2020), we held that assault with a "deadly weapon or dangerous instrument" involves moral turpitude even

though simple assault does not. We reasoned that the extra element "necessarily makes the offense more serious, more dangerous, and therefore more blameworthy than a simple assault." *Id.* at 552; *see also Matter of Lopez-Meza*, 22 I. & N. Dec. 1188, 1196 (BIA 1999) (holding that an aggravated driving-under-the-influence ("DUI") offense involves moral turpitude, even though simple DUI does not).

With respect to the mens rea, the greater the requisite state of mind, the less serious the resulting harm has to be in order for the crime to be classified as one involving moral turpitude. *Leal v. Holder*, 771 F.3d 1140, 1146 (9th Cir. 2014). In *Leal*, we held that felony endangerment under Arizona law is a crime involving moral turpitude, even though the mens rea is only recklessness, because of the level of risk (actual and substantial) and the severity of the potential harm (imminent death). *Id.* at 1144. Conversely, we held in *Fugow* that unlawful imprisonment under Hawaii law is a crime involving moral turpitude because of a high mens rea (knowingly), even though the harm risked (serious bodily injury) was less than the potential harm identified in *Leal*. *Fugow*, 943 F.3d at 459.

Here, section 2800.4 requires willfulness—an elevated mens rea—with respect to *both* fleeing a pursuing peace officer *and* driving in the wrong direction during flight. We agree with the BIA that willfully driving in the wrong direction while willfully fleeing a pursuing police officer inherently creates a risk of harm to others that is substantial enough for the statute categorically to meet the definition of a crime involving moral turpitude.

Our reasoning in *Ramirez-Contreras* supports that conclusion, even though *Ramirez-Contreras* held that a

different section of the California Vehicle Code was not a crime involving moral turpitude. The law at issue there, California Vehicle Code section 2800.2, defines a different aggravated version of section 2800.1: fleeing or attempting to elude a pursuing peace officer at a time when the driver has "three or more violations that are assigned a traffic violation point count." *Ramirez-Contreras*, 858 F.3d at 1301. Those traffic infractions expressly include "relatively innocuous sorts of conduct," such as driving one's car without proper registration and driving a car that is out of compliance with air pollution standards. *Id.* at 1304.

We acknowledged "the seriousness of any flight from police." *Id.* at 1306. And we recognized that other courts have held that statutes criminalizing intentional flight from police *plus* an aggravating element constitute crimes involving moral turpitude: *Mei v. Ashcroft*, 393 F.3d 737 (7th Cir. 2004) (fleeing from police while going 21 or more miles per hour over the speed limit); *Cano-Oyarzabal v. Holder*, 774 F.3d 914 (7th Cir. 2014) (fleeing from police while interfering with the officer, vehicles, or pedestrians; speeding up; or turning headlights off); and *Ruiz-Lopez v. Holder*, 682 F.3d 513 (6th Cir. 2012) (fleeing from police while driving "in a manner indicating a wanton or willful disregard for the lives or property of others"). *Id.* at 1304–05.

We did not suggest that any of those cases was wrongly decided. Rather, we distinguished them on two grounds: "The statutes in those cases penalized *willful* conduct that *increased the risk of harm to others*." *Id.* at 1305 (emphases added). But the aggravating conduct that could give rise to a violation of California Vehicle Code section 2800.2 (such as driving one's car without proper registration or failing to meet air pollution standards) need not be willful, and such

conduct does not increase the risk of harm that arises from fleeing. *Id.* at 1306.

By contrast, a violation of section 2800.4 requires *willfully* driving in the wrong direction; negligence, or even recklessness, does not suffice. And driving in the wrong direction inherently *increases the risk of harm* to others during the flight from police.[2]

As to this final point, Petitioner argues that the risk of harm to others is insufficient when we consider, as we must, the least of the acts criminalized. *Moncrieffe*, 569 U.S. at 190–91. We disagree. In theory, section 2800.4 could apply to a driver who willfully flees from police at ten miles per hour and who, during that slow flight, willfully drives on

---

[2] Petitioner argues that the legislative history supports his view that section 2800.4 does not involve moral turpitude. Quoting selectively from a bill analysis, Petitioner reasons as follows. Many law enforcement agencies had implemented policies that require officers to end a pursuit when the pursued person drives the wrong direction, and the legislature enacted section 2800.4 in part to deter drivers from evading capture by driving the wrong direction. Vehicles: Police Pursuits, Sen. Public Safety Comm., Bill Analysis on Sen. Bill No. 1735, 2005–2006 Reg. Sess. (April 25, 2006). According to Petitioner, a simple evasion technique does not implicate moral turpitude. We emphatically disagree with Petitioner's reasoning. Putting aside that law enforcement agencies almost certainly enacted the no-pursuit policy because of the dangerousness of driving the wrong direction during flight, the same bill analysis describes driving the wrong direction as "a dangerous tactic, risking the lives of innocent drivers and bystanders," and akin to "firing a loaded gun down a crowded sidewalk." *Id.* The legislative history thus confirms the common-sense notion that driving the wrong direction during flight from police is inherently dangerous.

the wrong side of a wide street for just five feet. But a highly unlikely theoretical possibility is not enough to remove section 2800.4 from the morally turpitudinous realm, for two reasons.

First, even a short, slow-speed trip in the wrong direction during flight creates a substantial risk of harm. Drivers, pedestrians, and others do not expect vehicles to travel in the wrong direction. Oncoming drivers, for example, could swerve dangerously to avoid a collision. Similarly, because the pursued driver is distracted by actively fleeing a pursuing officer, the driver will be less capable of responding alertly to other traffic. Driving in the wrong direction during flight, like speeding up even slightly or turning off headlights, *Cano-Oyarzabal*, 774 F.3d at 917–18, inherently creates a substantial risk of harm.

Second, a theoretical possibility is insufficient as a matter of law. When the Supreme Court directed us to consider the least of the acts criminalized, it specifically cautioned that "our focus on the minimum conduct criminalized by the state statute is not an invitation to apply 'legal imagination' to the state offense; there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'" *Moncrieffe*, 569 U.S. at 191 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). We see no realistic probability that California would apply this statute to conduct that falls outside the generic definition of a crime involving moral turpitude. *See, e.g.*, *Castrijon-Garcia*, 704 F.3d at 1215 (applying *Duenas-Alvarez* to analyze whether a crime involves moral turpitude).

Petitioner directs us to two California cases applying section 2800.4, but both involved incredibly dangerous conduct. In *People v. Canela*, 168 Cal. Rptr. 3d 858 (Cal. Ct. App. 2014), the defendant sped up, ran stop signs and red lights, and hit a pedestrian, severely injuring him. *See id.* at 862–64 (holding that California courts consider the entire flight in determining the harm caused by the crime). In *People v. Scarborough*, No. A147529, 2018 WL 3046120 (Cal. Ct. App. June 20, 2018) (unpublished), the defendant drove the wrong way, in reverse, at a high rate of speed in a residential neighborhood and, later, jumped out of the car while it was moving, causing the unoccupied car to veer off the road into bushes near an elementary school, shortly after school let out.[3] And Petitioner does not argue that his own case illustrates an application of the statute to innocuous conduct. Indeed, given his simultaneous conviction for felony hit-and-run resulting in injury to another person, we infer to the contrary.

---

[3] Petitioner bears the burden of identifying a case in which the state court has "appl[ied] the statute in the special (nongeneric) manner for which he argues." *Duenas-Alvarez*, 549 U.S. at 193. Nonetheless, we have independently reviewed California cases involving convictions under Section 2800.4 and found none that describes non-dangerous conduct. *See, e.g.*, *People v. Sweet*, No. A156082, 2020 WL 2092428, *1 (Cal. Ct. App. May 1, 2020) (unpublished) (recounting that the defendant "ran stop signs, drove on the wrong side of the street toward oncoming traffic, swerved to avoid collisions, violated speed restrictions, skidded in an intersection, and appeared to side-swipe both a school bus and another vehicle"); *People v. Stephens*, No. D074146, 2019 WL 1292708, *1 (Cal. Ct. App. March 21, 2019) (noting that an officer chased a truck "through several stop signs and red lights at speeds up to 60 miles per hour," and that, "[a]fter several minutes, the truck veered into a residential neighborhood, continuing to violate traffic signs and at one point driving 40 miles per hour down the wrong side of the road and almost colliding with another vehicle").

We conclude, then, that the BIA permissibly held that a violation of California Vehicle Code section 2800.4 is categorically a crime involving moral turpitude.

**Petition DENIED.**